CITY OF SALEM & another *vs.* ATTORNEY GENERAL
& another.

Essex.   May 7, 1962. — June 28, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & SPIEGEL, JJ.

*Parks. Devise and Legacy,* Gift of land for "Public Grounds," Charitable
    trust. *Municipal Corporations,* Parks, Trusts, Contracts. *Trust,* Char-
    itable trust. *Contract,* What constitutes, With municipality. *Constitu-
    tional Law,* Obligation of contracts. *Words,* "Public Grounds," "Park."

A devise of a tract of land eminently suited by topography for park pur-
    poses to a city "to be used forever as Public Grounds for the benefit and
    enjoyment of the citizens" of the city "under such regulations as may
    seem best for the proper care" thereof, accompanied by a request that a
    specified person "may be consulted as to the laying out and manage-
    ment of said Grounds," in the circumstances was a devise of the tract in
    trust for use as a public park.   [629–630]
Acceptance by a city of a devise of land to it in trust for use as a public
    park created a contract whose obligation would be unconstitutionally
    impaired by a subsequently enacted statute authorizing use of a portion
    of the land for the erection of a public school building; the statute
    afforded no right for such school use.   [631]

PETITION filed in the Probate Court for the county of Es-
sex on December 7, 1960.

The case was heard by *Phelan,* J.

*Alfred A. Dobrosielski,* City Solicitor, stated the case.

*John A. McNiff* for the School Committee of Salem.

*James E. Farley* for the Board of Park Commissioners of
Salem.

WILLIAMS, J.   This is a petition by the city of Salem for
a determination of its right to use for the erection of a pub-
lic school building a portion of a tract of land known as
Ledge Hill which was devised to the city by William Mack.
The respondents are the Attorney General and the board of
park commissioners of the city.   The school committee of
the city has been allowed to intervene.   The parties, other
than the Attorney General, have agreed on the pertinent
facts and he has submitted his rights and obligations to the
determination of the court.   The statement of agreed facts
was approved by the judge.

The land involved is an area of twenty-one acres in the northerly section of the city. It was formerly owned by Esther C. Mack, who died on December 24, 1884. She devised her estate known as Ledge Hill to her brother William "trusting that he will bequeath said estate to the city of Salem, Massachusetts, for public grounds, for the benefit of the inhabitants of said city." William Mack, who was a practicing physician in Salem and unmarried, died on June 9, 1895. He left a will containing various charitable bequests and devised Ledge Hill with the buildings thereon "[i]n accordance with the wishes of my late sister Esther as expressed in her will . . . to the City of Salem to be used forever as Public Grounds for the benefit and enjoyment of the citizens of said City, under such regulations as may seem best for the proper care of the same . . ." and requested that one "Alfred Stone . . . may be consulted as to the laying out and management of said Grounds so long as it may be agreeable to him." Stone was a legatee under Esther's will and with her brother William was also coexecutor of her estate. He later became a coexecutor of William's will.

On October 16, 1896, the city's board of aldermen resolved "that the bequest of the late William Mack devising Ledge Hill commonly known as the 'Mack Farm' to the city of Salem for use as a park be and the same hereby is accepted and the Park Commissioners are hereby requested to take control of the same in the name of the city." This resolve was adopted a week later by the common council of the city. The park commissioners thereupon assumed control of Ledge Hill and, since 1896, have continued with its custody and control. In 1904, the executors of the estate of William filed a petition with the Probate Court, in which, after reciting that "Mack gave his farm in said Salem . . . for the purpose of establishing a park," they sought instructions as to the disposal of certain rentals which they had collected from the tenant of an old building on the farm. The court ordered that the money, amounting to $877.75, be paid to the city of Salem, and the common coun-

cil directed that the income therefrom be paid annually to the board of park commissioners to be used "for planting trees and shrubs in Ledge Hill Park and otherwise adding to the permanent beauty of said park." The park contains an old farm house, used as a home by the park superintendent, an old renovated barn used as a garage and equipment shed, ball field, playground, greenhouse, flower beds, driveway, paths, many trees, and other open areas left nearly in natural state. It is used by neighborhood associations for lawn parties and field days.

By St. 1908, c. 130, which was approved by the city on April 24, 1908, the Legislature provided that: "The board of park commissioners of the city of Salem shall have the same authority over the public pleasure grounds in said city known as Salem Willows, Ledge Hill Park, and Liberty Hill Park, which by chapter twenty-eight of the Revised Laws is given to boards of park commissioners over public parks located in accordance with the provisions of said chapter; but said board may permit any buildings or other structures standing upon said pleasure grounds at the time of the taking effect of this act to remain thereon, to be used for shelter, refreshments, amusements, wharves, boat landings, boat houses and other purposes, for the accommodation of the public; and may, from time to time, permit other buildings and structures to be erected on said grounds to be used for said purposes."

By St. 1957, c. 148, it was provided that: "The city of Salem is hereby authorized to use for the erection of a public school building and for other school purposes, and for all purposes incidental thereto, . . . a portion of Ledge Hill Park now owned and held by said city for park, playground or recreation purposes" containing about three acres and shown on a plan filed in the office of the city engineer. This act was approved by the city council on March 14, 1957, and by the mayor on the following day.

It is agreed that there is an actual controversy within the meaning of G. L. c. 231A, § 1, existing among the city of Salem, the park commissioners, and the school committee

as to whether this three acre parcel may lawfully be used as a public school site. There was a hearing on June 1, 1961, after which the judge took a view of the premises. It was pointed out to him, apparently by agreement, that "the Park is a beautiful, well-landscaped area that affords a view of the City of Salem, a well-kept area and one of the highest points in the City of Salem." The proposed school building would be approximately 500 feet in length with a depth of approximately 80 feet except for wings which would be about 120 feet wide. Directly north of the proposed building is a level area that in the past has been used as a skating area for children and other members of the public. Adjacent to the three acre parcel are a baseball diamond with bleachers, the superintendent's residence, and a nursery for the care and production of the plants that are used in the park. There is a playground with swings and other equipment which are used by children. Throughout the park there are numerous trees and settees.

On July 11, 1961, the probate judge entered a decree "1. That the use by the City of Salem of the estate known as Ledge Hill and described in Clause 14 of the will of said William Mack is restricted to use for park purposes; 2. That a portion of said parcel cannot be properly used for a school building site under the provisions of said will."

From this decree the school committee has appealed.

The determination of whether the school committee may use a portion of Ledge Hill for the erection of a public school and for other school purposes hinges on whether the city by virtue of the devise of William Mack holds the parcel in trust as a public park for the use of its citizens. This, in turn, depends on the intent of Dr. Mack in devising it to the city, which must be ascertained from the language of his will and the circumstances attending its execution. *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 19. The expressed purpose of the devise was that the land "be used forever as Public Grounds for the benefit and enjoyment of the citizens . . . ." The term "Public Grounds" in connection with city property conceivably might include any land owned by the city and used for

municipal buildings, parking lots, parks and playgrounds, but we think it unlikely that the donor employed the words in that inclusive sense.   The right to use the land generally for municipal purposes could have been granted by a simple devise to the city without qualification.   We think that by the use of the term "Public Grounds" the testator must have intended a use for which the area was not only peculiarly adapted but which would benefit the public by affording them a special means of enjoyment.   The eminent suitability of Ledge Hill for park purposes is demonstrated by its admitted topography and by the history of the use to which it has been put since the death of Dr. Mack.   The city accepted it for use as a park and turned its control over to the park commissioners.   Since then it has been continuously used for park purposes.   In 1904, the council directed that rentals derived from an old building be used to beautify it as a park.   In 1908, in authorizing its management and control by the park commissioners the Legislature referred to it as a "public pleasure grounds."   It was stated in *King* v. *Sheppard,* 157 S. W. 2d 682, 685 (Tex. Civ. App.), "The terms, 'public grounds' and 'public parks,' have been used interchangeably; and as used in modern and present times in America the term 'park' usually signifies an open or inclosed tract of land set apart for the recreation and enjoyment of the public; or, 'in the general acceptance of the term, a public park is said to be a tract of land, great or small, dedicated and maintained for the purposes of pleasure, exercise, amusement, or ornament; a place to which the public at large may resort to for recreation, air, and light.' "

We think that the devise was intended to grant Ledge Hill to the city to be used for the purposes of a public park. Such construction would explain the request of the testator that Alfred Stone be consulted as to the "laying out and management of said grounds."   If this was the intent of the testator, it almost necessarily follows that he intended to establish a trust to effect this purpose as only by such means could its use for a public park be effected in perpetuity.

The acceptance of the grant by the city constituted a contract between the donor and the donee which must be observed and enforced. *Adams* v. *Plunkett,* 274 Mass. 453, 462–463. As the use authorized by the 1957 statute is at variance with the use for which the city holds the land, it impairs the obligation of the contract and affords no right to the school committee to use the land for school purposes. *Cary Library* v. *Bliss,* 151 Mass. 364, 378. We think the use intended by the school committee would be of a kind materially different from that contemplated by the testator. A public park normally is an open space maintained for the recreation and pleasure of the public. See *McLaughlin* v. *City & County of Denver,* 131 Colo. 222; *Borough of Fenwick* v. *Saybrook,* 133 Conn. 22; *Williams* v. *Gallatin,* 229 N. Y. 248, 253; *King* v. *Sheppard, supra,* 685. We held in *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, 591, in connection with the Back Bay Fens that the ''construction of . . . [a large school] building . . . [would be] wholly inconsistent with the use of the land covered by it and in its immediate vicinity for a park.''

In our opinion the court was right in holding that the use of Ledge Hill is restricted to use for park purposes and that it cannot be properly used as a site for a school building.

*Decree affirmed.*