BERNARD J. DUNPHY & others *vs.* COMMONWEALTH & others.

Plymouth. March 6, 1975. — July 17, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Parks. Gift,* Land for "Public Park." *Municipal Corporations,* Parks, Trusts, Contracts. *Trust,* Charitable trust, Public trust. *Constitutional Law,* Obligation of contracts. *Contract,* What constitutes, With municipality. *Real Property,* Restriction.

Land given to a town by a deed which was accepted and recorded and which recited that the land should "be kept and used as a Public Park in perpetuity for the public good" is subject to a public charitable trust requiring the land to be kept and used as a public park in perpetuity; the Legislature was without power to enact St. 1972, c. 89, pursuant to the express authority of which the town conveyed the land to the Commonwealth as a site for an artificial ice skating rink, and the conveyance was, and a proposed skating rink building would be, a violation of the trust. [377-383]

G. L. c. 184, §§ 26 and 28, both as amended, relating to the enforce-
ability of restrictions and conditions affecting land, have no ap-
plication to land held on a public charitable trust in perpetuity.
[384]

BILL IN EQUITY filed in the Superior Court on Novem-
ber 29, 1972.

The suit was heard by *McNaught,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court on its own initiative, ordered direct
appellate review.

*Alton F. Lyon* for the plaintiffs.

*Michael Eby,* Deputy Assistant Attorney General, for
the Commonwealth.

QUIRICO, J.    This is a bill in equity under G. L.
c. 231A, in which the plaintiffs seek a declaration of the
rights of various parties in and to a parcel of land located
in the town of Rockland (town).    This parcel was
conveyed to the town by the late Arthur Burgess Reed
(grantor) by a deed dated April 4, 1917, which was
accepted by the town and recorded in the appropriate
registry of deeds on April 20, 1917.    The plaintiffs are
three named persons, otherwise identified only as resi-
dents of the town, and two named persons who are
identified as the granddaughter and niece of the grantor.
The defendants are the Commonwealth, the five Com-
missioners of its Department of Public Works, its Com-
missioner of the Department of Natural Resources, the
three members of the town's board of selectmen, and
D. Antonellis, Inc. (contractor), added as an intervening
party defendant.

A judge of the Superior Court entered a final decree
adverse to the contentions of the plaintiffs and ordered
their bill dismissed.    The plaintiffs are appealing from
that decree.    For the reasons hereinafter stated, we
reverse the final decree and order the entry of a new
judgment in favor of the plaintiffs.

The trial of the case and all steps through the entry of
the appeal in the Appeals Court occurred before July 1,

1974, when our new rules of civil and appellate procedure took effect. This court, acting on its own motion, caused the case to be brought here for direct appellate review. G. L. c. 211A, § 10 (A), inserted by St. 1972, c. 740, § 1.

The case is before us on the basis in part of facts alleged and admitted in the pleadings and in part of facts found and voluntarily reported by the judge. The parties have treated the report as though it were a statutory report of material facts under G. L. c. 214, § 23, as it appeared prior to its repeal, effective July 1, 1974, by St. 1973, c. 1114, § 62. The evidence is not reported. In this situation we accept as true the facts admitted and the subsidiary facts found and reported by the judge, and the question is whether the decree appealed from was rightly entered on those facts. *Jose* v. *Lyman*, 316 Mass. 271, 277 (1944). *Sturnick* v. *Watson*, 336 Mass. 139, 143 (1957). *C. & W. Dyeing & Cleaning Co. Inc.* v. *DeQuattro*, 344 Mass. 739, 740 (1962).

We summarize the pertinent facts. The 1917 deed of the grantor to the town contained the following language of significance to the issue before us: "I, Arthur Burgess Reed . . . in consideration of my filial regard for my father Maj. Edward P. Reed . . . and as a memorial of his patriotism and loyalty to his country and to the place of his birth, do hereby grant with warranty covenants to the . . . [town a parcel of land located therein, containing nearly 3.64 acres, fully described by metes and bounds and by reference to registry records]. *The above described land* . . . [was] owned by my father at the time of his decease and *is hereby conveyed to said . . .* [town] *to be kept and used as a Public Park in perpetuity for the public good and to be called the Maj. Edward P. Reed Park*" (emphasis supplied).

On April 6, 1971, the town, at its annual meeting voted to authorize and empower its selectmen "to take whatever action they deemed necessary to permit the erection and maintenance of an artificial ice skating rink

on the land conveyed to the Town by the deed of Arthur Burgess Reed." Statute 1972, c. 89, which took effect on its passage and was approved March 15, 1972, provided: "The town of Rockland is hereby authorized to convey the Major Edward P. Reed Park, located therein, to the Commonwealth as a site for an artificial ice skating rink to be named the Major Edward P. Reed Rink."

On May 8, 1972, the town conveyed the Maj. Edward P. Reed Park (Reed Park) to the Commonwealth. On August 21, 1972, the Commonwealth and the town entered into a written agreement providing that (a) the town would convey Reed Park to the Commonwealth at no cost to the grantee (this being the same land the town had already conveyed to the Commonwealth on May 8, 1972), (b) the Commonwealth would erect and operate a skating rink on the land, and (c) the town would provide specified public and municipal utility services, access to the building site, and fire and police protection.

The Reed Park land consists of about 3.64 acres, or about 160,000 square feet, and until recently it included a stand of trees of great age.[1] Under the Commonwealth's plan for the construction of the rink and use of the property, some trees will be left on three strips of the land of the following sizes: one about fifty feet by 160 feet, one about fifteen to thirty feet in depth by 115 feet

---

[1] On the filing of the bill alleging that some trees on the land had been cut down, a judge of the Superior Court entered an order temporarily restraining "the Commissioners . . . [of the] Department of Public Works and . . . [their] agents . . . servants, and parties under contract and control of said Department . . . from cutting any more trees" on the Reed Park land. On return of the order of notice, the order was continued in effect pending the outcome of the trial of the case. After the entry of the final decree adverse to the plaintiffs, the judge entered an order continuing the temporary injunction in full force and effect pending the appeal to the Appeals Court, but on condition that the plaintiffs file a surety company bond in the sum of $10,000 to indemnify the Commonwealth and the contractor against increased costs of construction pending appeal. The injunction is still in effect, but on January 2, 1974, a Justice of the Appeals Court relieved the plaintiffs of the obligation to file the bond.

in length, and the other about twenty feet by sixty-three feet, the total area for all three being about 12,000 square feet. The remainder of the Reed Park land is to be devoted to the building housing the rink, driveways, and parking areas, surfaced with bituminous concrete.

The plaintiffs seek a declaration that the cutting of the trees and erection of the proposed skating rink and related facilities and the conveyance of the land to the Commonwealth for the proposed use is unlawful. They ask the court to hold that by its acceptance of the conveyance of the land in the circumstances described above, the town "has contracted and is charged with a charitable trust to carry out the terms of the deed that the land be kept and used as a public park." The judge stated in his decision that "[t]he Court was informed that the right of the . . . [plaintiffs] to file the bill is not in issue," and he ruled that "[s]ince two of Mr. Reed's heirs are parties to this proceeding, they are indeed interested in its outcome."[2]

The judge's decision included the following specific findings and rulings: (a) "The Court cannot agree with the . . . [defendants'] contention that the planned use of this property would coincide with the intention of Mr. Reed when he made his gift to the Town of Rockland"; (b) "When . . . for all practical purposes, the entirety of the area is devoted to a permanent building, and hot-top

---

[2] Although there is no issue before us on the right of the plaintiffs to bring this suit, see G. L. c. 214, § 3, as appearing in St. 1973, c. 1114, § 62, which provides in part as follows: "The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases: . . . (10) Actions to enforce the purpose or purposes of any gift or conveyance which has been or shall have been made to and accepted by any county, city, town or other subdivision of the commonwealth for a specific purpose or purposes in trust or otherwise . . . . *Such action shall be commenced only by the attorney general or, with leave of court, by ten taxpayers of such county, city, town or other subdivision*" (emphasis supplied). *Athas* v. *Mayor of Holyoke,* 356 Mass. 382, 384-385 (1969). We do not pursue this issue further.

parking spaces and driveways, the parcel is no longer a park with a skating rink. It is a skating rink — period. The preservation of a token number of trees does not change the situation. The public at large will no longer use Maj. Edward P. Reed Park. Skaters will use it"; and (c) "The Court finds and rules, however, that the proposed construction is not consistent with the purpose that the land be 'used as a Public Park in perpetuity for the public good.'" Notwithstanding these findings and rulings, the judge decided against the plaintiffs on the merits without deciding the question whether the town held the land in trust to be used only as a public park. See G. L. c. 45, §§ 3 and 7. The judge apears to have based his decision on the assumption that the language in the grantor's deed to the town to the effect that the land conveyed was "to be kept and used as a Public Park in perpetuity for the public good" constituted a restriction on the use of land within the meaning of G. L. c. 184, § 26, as amended through St. 1969, c. 666, § 3. On the basis of that assumption he then concluded that since the restriction was originally imposed in 1917 and no subsequent notice of the restriction was ever recorded, the restriction was no longer enforceable because of the fifty-year period of limitation on enforceability imposed by G. L. c. 184, § 28, as amended by St. 1974, c. 527, § 3.[3] The disposition of the case on this ground was error.

---

[3] The pertinent provisions of G. L. c. 184, §§ 26 and 28, are the following:

§ 26. "All restrictions on the use of land or construction thereon which run with the land subject thereto and are imposed by covenant, agreement, or otherwise, whether or not stated in the form of a condition, in any deed, will or other instrument executed by or on behalf of the owner of the land or in any order of taking shall be subject to this section and sections twenty-seven through thirty," with exceptions not here material.

§ 28. "No restriction imposed before . . . [January 1, 1962] shall be enforceable after the expiration of fifty years from its imposition unless a notice of restriction is recorded before the expiration of such fifty years or before . . . [January 1, 1964], whichever is later."

The decisive issue in this case is whether the town (a) obtained and held title to the land in question as the unconditional owner thereof in fee simple, subject to G. L. c. 45, § 7, to the effect that "[l]and taken for or held as a park under this chapter shall be forever kept open and maintained as a public park, and no building which exceeds six hundred square feet in area on the ground shall be erected on a common or park dedicated to the use of the public without leave of the general court," but with the right to divert the land to other uses and purposes when expressly authorized to do so by the Legislature as held by this court in the following decisions: *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, 585-593 (1912); *Lowell* v. *Boston,* 322 Mass. 709, 731-736 (1948); *Loomis* v. *Boston,* 331 Mass. 129, 131-132 (1954); *Brooks* v. *Boston,* 334 Mass. 285, 286-287 (1956); *Gould* v. *Greylock Reservation Commn.* 350 Mass. 410, 419 (1966); *Robbins* v. *Department of Pub. Works,* 355 Mass. 328, 330 (1969); and *Brookline* v. *Metropolitan Dist. Commn.* 357 Mass. 435, 440 (1970) (see *Athas* v. *Mayor of Holyoke,* 356 Mass. 382, 384 [1969]), or (b) obtained and held title to the land under circumstances which made the land subject to a public charitable trust requiring that the land be used only for the purposes of a public park without any power in the Legislature to authorize or require the town to divert the trust property to other uses or purposes, as held by this court in the following decisions: *Adams* v. *Plunkett,* 274 Mass. 453, 462-463 (1931); *City Bank Farmers Trust Co.* v. *Carpenter,* 319 Mass. 78, 79-80 (1946); *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 18-20 (1960); *Salem* v. *Attorney Gen.* 344 Mass. 626, 630-631 (1962); and *Mahoney* v. *Attorney Gen.* 346 Mass. 709, 714-715 (1964).[4]

---

[4] On the facts of this case there is no occasion to discuss the question whether land held in trust for a public purpose may be taken by

We hold that the present case falls in the second category described above, and therefore that the town took and held title to the Reed Park land as trustee under a public charitable trust requiring it to use the land for a public park in perpetuity. The facts of this case are very similar to those involved in *Salem* v. *Attorney Gen.*, *supra*, where a testator devised some land called "Ledge Hill" to the city in 1895 "to be used forever as Public Grounds for the benefit and enjoyment of the citizens of said City." *Id.* at 627. By St. 1957, c. 148, the Legislature attempted to authorize the city to use a portion of the land for the erection of a public school building. After a discussion of whether the words "Public Grounds" meant "public park," we said, at pp. 630-631, "We think that the devise was intended to grant Ledge Hill to the city to be used for the purposes of a public park. . . . If this was the intent of the testator, it almost necessarily follows that he intended to establish a trust to effect this purpose as only by such means could its use for a public park be effected in perpetuity. The acceptance of the grant by the city constituted a contract between the donor and the donee which must be observed and enforced. *Adams* v. *Plunkett,* 274 Mass. 453, 462-463 [1931]. As the use authorized by the 1957 statute is at variance with the use for which the city holds the land, it impairs the obligation of the contract and affords no right to the school committee to use the land for school purposes."

The rule of the *Salem* case is controlling in the present case. The town in taking title to the Reed Park land assumed obligations and must now comply with them. It is not within the power of the Legislature to impair those obligations by legislation, and St. 1972, c. 89, does not validate the diversion of the property from public purposes to other uses and purposes.

eminent domain and put to a use of a different character. See *Codman* v. *Crocker,* 203 Mass. 146, 150 (1909).

General Laws c. 184, §§ 26 and 28, both as amended, relating to the creation, duration, recording and limitations on the enforceability of restrictions and conditions affecting land have no application to the trust in perpetuity involved in this case. Those statutes do not by their terms purport to limit the life of a public charitable trust or to limit the time within which legal proceedings to enforce the rights of the public thereunder may be commenced.

By reason of the conclusions reached above, we need not, and do not, consider the question whether the use of the Reed Park land for a public skating rink building and related facilities would be permissible under the town's zoning by-law which classifies the land for residential uses.

The final decree is reversed, and a new judgment is to be entered declaring that the parcel of land which is the subject of this litigation is impressed with a public charitable trust requiring that the land "be kept and used as a Public Park in perpetuity for the public good" in accordance with the terms of the deed of the grantor to the town dated April 4, 1917, that said land is still impressed with that trust notwithstanding the enactment of St. 1972, c. 89, and the conveyance of the land pursuant thereto by the town to the Commonwealth on May 8, 1972, and that the use of the land for the erection and operation of the proposed skating rink building and related facilities would constitute a violation of the terms and conditions of the trust to which the land is subject.[5]

*So ordered.*

---

[5] The decree which we have reversed included several declarations concerning the rights of the parties and then concluded with an order dismissing the bill. A final decree, under the former practice, and a judgment, under the current practice, declaring the rights of litigants in a case such as this should not conclude by dismissing the bill or complaint. *Morgan* v. *Banas*, 331 Mass. 694, 698 (1954). *Williams* v. *Liberty Mut. Fire Ins. Co.* 334 Mass. 499, 503 (1956). *Vasilakis* v. *Haverhill*, 339 Mass. 97, 101 (1959). *Hannan* v. *Enterprise Publishing Co.* 341 Mass. 363, 365 (1960).