# OPINIONS OF THE JUSTICES.

## Opinion of the Justices to the Senate.

*Parks. Municipal Corporations,* Parks, Trusts, Contracts. *Trust,* Charitable trust, Public trust. *Constitutional Law,* Obligation of contracts, Statute of limitations. *Real Property,* Reverter. *Contract,* What constitutes, With municipality.

A deed conveying land to a town in 1908 "on the [e]xpress [c]ondition that the same shall be appropriated, improved and forever used by the grantee as and for a public park and play ground for the use of the inhabitants of the town . . . and for no other purpose and that if said grantee shall fail to keep and perform said [c]ondition . . . this deed shall become and be absolutely null and void" created a possibility of reverter in the grantor or his successor in interest and was inconsistent with an intent to create a public charitable trust in perpetuity [984-985]; the deed constituted the contract between the grantor and the grantee, but statutes enacted to quiet title operate as a statute of limitations on the enforceability of the contractual rights of those holding under the grantor [986-987].

The statement in a deed to a town in 1908 that the premises conveyed "are to be used by the [t]own . . . as a part of a [p]ublic [p]ark and [p]layground now in process of development" merely described the use contemplated by the grantee and did not create a condition on the use to which the premises could be put [985]; nor did the statement create contractual rights [986].

A statement in a deed to a town in 1908 that the premises conveyed should be "forever" used by the grantee "as a part of a public park and playground now in process of development" indicated the grantor's intent to create a public charitable trust in perpetuity [985]; statutes relating to the "creation, duration, recording and limitations on the enforceability of restrictions and conditions affecting land" are inapplicable [988].

With respect to three parcels conveyed to a town in 1908 for use as part of a public park and playground, this court saw no constitutional impediment to the Legislature enacting a bill authorizing use of two of the parcels for public school purposes, but such a bill would be invalid as to the third parcel, which is held under a public charitable trust in perpetuity. [988-989]

On December 1, 1975, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in an order adopted by the Senate on October 20, 1975, and transmitted to us on October 28, 1975. The order recites that there is pending before the General Court a bill printed as House Bill No. 6691, entitled "An Act authorizing the city of Revere to use certain park land for school purposes" and that grave doubt exists as to its constitutionality if enacted into law. A copy of the bill was transmitted to us with the order. In its entirety, the bill provides: "SECTION 1. The city of Revere is hereby authorized to use for the erection of a public school building and for other school purposes all or any portion of Frederick's Park, now owned by the city and used for park and playground purposes, said park consisting of approximately fourteen acres in the Beachmont section of the city and bordered by Bennington Street formerly called Atlantic Avenue, Pearl Avenue now called Everard Street, Everard Street, Belle Isle Avenue, Pike Street formerly called Orchard Avenue and the Belle Isle Inlet. SECTION 2. This act shall take effect upon its passage."

The question presented is:

"Is it unconstitutional, as an infringement of contract between the donors of Frederick's Park in the city of Revere and said city for the General Court to authorize, through the enactment of House, No. 6691, said city to use said Frederick's Park as a public school site?"

Certified copies of three deeds involved in this matter were likewise transmitted to us by the clerk of the Senate.[1]

---

[1] Throughout this opinion we refer to these deeds, respectively, as the Johnson deed, the Caraher deed, and the Hall deed.

We further invited briefs to be filed by interested parties. A joint "Memorandum of Law and Facts Submitted by Amici Curiae" was filed by the city solicitor of the city of Revere and a special counsel for the city of Revere.[2]

*Background.*[3] Frederick's Park, located in the Beachmont section of the city of Revere (city), consists of fifteen acres, more or less, of land deeded to the now city by three separate instruments in 1908. The deeds were not recorded in concert, but it is clear from certain language employed by the grantors of at least two of the parcels which comprise the whole that their intention at the time of the making of the deeds was that the land should be used as part of a public park and playground.[4] Since 1908 the land has been used at least in part for public recreational activities.

---

[2] In response to our invitation for briefs from amici curiae, George B. Heddendorf, through his attorneys, petitioned this court for leave to intervene in the matter. A single justice of this court, treating the petition as a motion to file an amicus brief, orally allowed that motion on November 5, 1975. Heddendorf subsequently informed the court of his intention not to pursue the motion further, and no brief was filed on his behalf.

[3] We glean these facts from the amici brief. In so far as they go, they appear undisputed. But see note 7, *infra,* as to factual uncertainties.

[4] In pertinent part, the Johnson deed contains the following: "The above described premises are, however conveyed on the Express Condition that the same shall-be appropriated, improved and forever used by the grantee as and for a public park and play ground for the use of the inhabitants of the town of Revere and for no other purpose and that if said grantee shall fail to keep and perform said Condition then and in such event this deed shall become and be absolutely null and void." (Because of our treatment, *infra,* of the statutes governing uncertain and obsolete restrictions, other conditions in the Johnson deed are not dealt with separately in this opinion.)

The Caraher deed provides: "The premises hereby conveyed are to be forever used by the Town of Revere as a part of a public park and playground now in process of development."

The third grant — the Hall deed — contains this language: "The premises hereby conveyed are to be used by the Town of Revere as a part of a Public Park and Playground now in process of development." For reasons which will become clear, we do not consider this language as expressive of the grantor's intent that the deeded land be used solely for park purposes.

Recently, the city determined to replace the Beachmont section elementary schools. The present location of these schools was deemed unsuitable because they were situated in the flight path of planes arriving at and departing from the General Edward Lawrence Logan International Airport. One possible alternate location was rejected by the school assistance board of the Commonwealth (the board) because it would place the proposed new school too near the ocean and would present environmental problems. Eventually, Frederick's Park was settled on as the only viable site for the new elementary school. The board, the Revere school committee, the Revere city council, and the Revere parks and recreation department have all approved the proposed site, and plans for construction advanced rapidly until this court decided the case of *Dunphy* v. *Commonwealth,* 368 Mass. 376 (1975).

The *Dunphy* case was a bill for a declaration of rights brought by certain residents of the town of Rockland (town) and certain relatives of the grantor of a parcel of land to the town for park purposes seeking to establish whether the town could maintain an artificial ice skating rink on the land. We characterized the "decisive issue" in *Dunphy* as "whether the town (a) obtained and held title to the land in question as the unconditional owner thereof in fee simple, subject to G. L. c. 45, § 7[5] . . . but with the right to divert the land to other uses and purposes when expressly authorized to do so by the Legislature . . . or (b) obtained and held title to the land under circumstances which made the land subject to a public charitable trust requiring that the land be used only for the purposes of a public park without any power in the Legislature to authorize or require the town to divert the trust property to other uses or purposes. . . ." 368 Mass. at 382. Citing the rule in *Salem*

---

[5] General Laws c. 45, § 7, provides in part: "Land taken for or held as a park under this chapter shall be forever kept open and maintained as a public park, and no building which exceeds six hundred square feet in area on the ground shall be erected on a common or park dedicated to the use of the public without leave of the general court . . . ."

v. *Attorney Gen.*, 344 Mass. 626 (1962), as controlling in *Dunphy*, we held that "the town took and held title to the . . . land as trustee under a public charitable trust requiring it to use the land for a public park *in perpetuity*" (emphasis added). 368 Mass. at 383. We noted that only by use of a trust could the grantor effectuate his expressed intent that the land be used for a public park forever, and that when the town accepted the grant a contract was formed between the grantor and grantee, the obligations of which the Legislature could not impair by statute. *Ibid. Salem* v. *Attorney Gen., supra* at 629-630.

1. The answer to the question presented here depends essentially on the same analysis of the issue we identified as decisive in *Dunphy.* If the *Dunphy* and *Salem* rule controls, the contract between a grantor and a grantee cannot be impaired by the General Court's enactment of legislation authorizing the grantee to violate its agreement to maintain in perpetuity a public park and playground on a particular site. See *Mahoney* v. *Attorney Gen.*, 346 Mass. 709, 713-714 (1964); *Nickols* v. *Commissioners of Middlesex County*, 341 Mass. 13, 24 (1960). Cf. *City Bank Farmers Trust Co.* v. *Carpenter*, 319 Mass. 78, 80-81 (1946). Such authorization would be contrary to the mandate of art. I, § 10, of the Constitution of the United States.[6]

---

[6] The "Contract Clause" states: "No state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. Const. art. I, § 10.

Although the limited question before us restricts our consideration to the bill's constitutionality under the contract clause, we recognize, as the Legislature must, that there are additional qualities which a statute of this nature must possess. For example, the statute must be "plain and explicit." For amplification of those terms see *Brookline* v. *Metropolitan Dist. Comm'n*, 357 Mass. 435, 440 (1970); *Robbins* v. *Department of Pub. Works*, 355 Mass. 328, 330 (1969); *Sacco* v. *Department of Pub. Works*, 352 Mass. 670, 672 (1967). Furthermore, while we express no opinion on the correctness of his conclusions, we note that the Attorney General of the Commonwealth has stated that art. 49, as appearing in art. 97 of the Amendments to the Constitution of the Commonwealth (which provides in relevant part that "[l]ands . . . taken or acquired for

We need only look at the language employed by the grantors in the *Salem* and *Dunphy* cases to distinguish the instant case. As we said in the *Salem* case, "[whether the city holds the land in trust] depends on the intent of [the testator] in devising it to the city, which must be ascertained from the language of his will and the circumstances attending its execution." 344 Mass. at 629. *Nickols* v. *Commissioners of Middlesex County, supra* at 19.

In the *Dunphy* case, the grantor stated that the land conveyed was "to be kept and used as a Public Park in perpetuity for the public good . . . ." *Dunphy* v. *Commonwealth, supra* at 378. The language at issue employed by the testator in *Salem* was to the effect that the land devised was "to be used forever as Public Grounds for the benefit and enjoyment of the citizens of said City." *Salem* v. *Attorney Gen., supra* at 627. It is clear from this language that the grantors in each of these cases intended to create trusts in perpetuity for the public benefit. No provision was made for a disposition of the granted tracts should some use other than for a public park be attempted. The failure to provide for a reversion to or a right of entry in the grantor or his heirs, successors or assigns indicates quite clearly that no use other than for park purposes was contemplated or sanctioned by the contracting parties. See *Selectmen of Nahant* v. *United States,* 293 F. Supp. 1076, 1078 (D.C. Mass. 1968), and cases cited.

*The Johnson deed.* The condition in the *Johnson* deed, set out in note 4 *supra,* provides for the possibility that the grantee (the city) might fail to "appropriate, improve and forever use" the deeded land for park and playground purposes. In such event, the deed was to become null and void; title to the property would automatically revert to the grantor or his successor in interest. The creation of a

---

. . . [essentially environmental] purposes shall not be used for other purposes or otherwise disposed of except by laws enacted by a two thirds vote, taken by yeas and nays, of each branch of the general court"), applies to land held for park purposes. Rep. A.G., Pub. Doc. No. 12, 1971, at 139, 141-143.

possibility of reverter is inconsistent with an intent to create a public trust in perpetuity.

*The Hall deed.* It appears from a reading of the language employed by Andrew F. Hall, the grantor of this particular parcel, see note 4 *supra,* that he was not creating a condition on the use to which the subject parcel could be put by the city. We do not discern from his wording any restriction on the land's use which it could fairly be said was "an essential factor in the scheme of benefaction." *Adams* v. *Plunkett,* 274 Mass. 453, 459 (1931). See *Lowell* v. *Boston,* 322 Mass. 709, 740, appeal dismissed sub nom. *Pierce* v. *Boston,* 335 U.S. 849 (1948). It is just as consistent with the wording used that the grantor was merely describing the use contemplated by the town at the time of the making of the deed. *Loomis* v. *Boston,* 331 Mass. 129, 131-132 (1954), citing *MacDonald* v. *Street Comm'rs of Boston,* 268 Mass. 288, 294-297 (1929). Without more, we interpret and treat the language in the Hall deed as descriptive and not conditional.

*The Caraher deed.* The grantor here, by insertion of the word "forever" in the granting clause, see note 4 *supra,* expressed an intent in plain words to create a trust in perpetuity of the subject parcel. No reading of the language used can distinguish the intent of Mary E. Caraher, Jr., from the intent expressed by the grantors in the *Salem* and *Dunphy* cases.

We are urged, however, to construe the "now in process of development" wording as an imposition of "the same legal environment as that pertaining to the park as a whole" on this tract. Perhaps we could find some support for the suggested approach if we were faced with a common scheme of provisions in separate deeds from the same grantor. *Snow* v. *Van Dam,* 291 Mass. 477, 480-484 (1935). *Canty* v. *Donovan,* 361 Mass. 879, 880 (1972). Our duty in these circumstances should be to "[s]earch . . . for a general plan . . . designed to express a consistent and harmonious purpose." *Nickols* v. *Commissioners of Middlesex County, supra* at 19, quoting from *Jewett* v. *Brown,* 319 Mass. 243,

248 (1946). Where the circumstances indicate, however, that the grantor of the Caraher deed was in all probability well aware of the conditions imposed by the Johnson deed and the phrase employed in the Hall deed, we decline to speculate as to her intent beyond the plain meaning of her words. She could hardly have reasonably concluded that there was no distinction in purpose between the Johnson deed's condition and the Hall deed's absence of condition.

2. Since at least the Johnson and Hall deeds do not indicate an intent to create public charitable trusts, our inquiry must shift to (a) what interests in land or other rights these deeds do create, if any, and (b) whether, by "leave of the general court," these interests or rights, if any, may be infringed.

We deal summarily with the Hall deed. As we have already said, our interpretation of the intent of Andrew F. Hall, gleaned from an examination of his language and the circumstances attendant on the execution of the deed, is that he was merely describing the use of his land contemplated by the town at the time of execution. No contractual rights were created by his statement, see note 4 *supra*, that the land was to be used as part of a public park and playground "now in process of development." See *Loomis* v. *Boston, supra.* Cf. *Lowell* v. *Boston, supra.*

As we have indicated, the Johnson deed contains a restriction on the granted parcel in the nature of a possibility of reverter. See note 4 *supra.* That deed constitutes the contract between the grantor and the city, and imposes obligations on the city which, if still valid, the Legislature may not impair by statute.

The Legislature, nevertheless, may by statute limit private rights in land provided that a reasonable time for enforcing those rights after the enactment of the statute is provided. *Brookline* v. *Carey,* 355 Mass. 424, 427 (1969), and cases cited. *Selectmen of Nahant* v. *United States,* 293 F. Supp. 1076, 1078 (D.C. Mass. 1968). The Legislature has enacted statutes for the express purpose of quieting titles subject, inter alia, to possibilities of reverter. G. L. c. 260,

§ 31A, as amended. See G. L. c. 184, §§ 26, 28, as amended. See Thirty-first Report of the Judicial Council (1955), Pub. Doc. No. 144, at 22 (1955). Pursuant to these statutes, all restrictions on the use of land or construction thereon which run with the land and which were imposed before January 1, 1962, are unenforceable fifty years after imposition unless certain steps to record the restriction were taken before the fifty years expired or before January 1, 1964, "whichever is later." G. L. c. 184, § 28. Furthermore, "[n]o proceeding based upon any . . . possibility of reverter . . . created before [January 2, 1955] shall be maintained either at law or in equity in any court after [January 1, 1964], unless on or before [January 1, 1964] . . . the reverter has occurred, and a person or persons having the . . . reverter shall have taken possession of the land . . . or . . . a person or persons . . . who . . . would be entitled if the reverter occurred . . . shall . . . have filed . . . a statement in writing, duly sworn to, describing the land and the nature of the right and the deed or other instrument creating it. . . ." G. L. c. 260, § 31A, as amended by St. 1961, c. 448, § 5.

As applied to the instant situation, these statutes operate as a statute of limitations on the enforceability of the contractual rights of those holding under the grantor of the Johnson deed. Fifty years after the imposition of the restriction in that deed, these contractual rights became unenforceable unless the restriction was re-recorded prior to January 1, 1964. Additionally, unless one of the clauses in c. 260, § 31A, was satisfied before January 1, 1964, no action may be maintained in any court in this Commonwealth based on "any . . . possibility of reverter . . . created before [January 2, 1955]." *Brookline* v. *Carey, supra.* Nothing has been brought to our attention which leads us to conclude that any of the procedural steps required by these statutes has been satisfied, nor have any of the contingencies mentioned (i.e., that the reverter occurred and a person en-

titled to do so has taken possession of the land) come to frui-tion.[7]

3. Despite what we have said in part 2, our conclusion is that enforceable contractual rights would be infringed on by enactment of House Bill No. 6691. The tract of land represented by the Caraher deed was acquired in trust by the city for public use and enjoyment. As we noted in *Dunphy* v. *Commonwealth*, 368 Mass. at 384, a public trust in perpetuity is unaffected by those statutes relating to the "creation, duration, recording and limitations on the enforceability of restrictions and conditions affecting land." Since the bill describes an area to be diverted to school purposes which encompasses the Caraher tract, we answer the question asked of us, "Yes." However, if the bill were

---

[7] In his petition for leave to intervene, see note 2, *supra*, Heddendorf represented that, in connection with a plan of liquidation of East Boston Company and Boston Port Development Company, which plan was approved by the United States District Court for the District of Massachusetts on June 29, 1961, he had received a conveyance from the Trustees of Port Realty Trust which conferred upon him "whatever reversionary right, title and interest East Boston Company and its successors . . . had in . . . [the tract of land represented by the Johnson deed]." This conveyance, according to the representation of Heddendorf, was recorded in the Suffolk registry of deeds, although the date of that recordation is not before us.

Heddendorf further represented that the use of all or any part of this tract of land for the erection of a school building and for other school purposes, without his consent, would constitute an infringement of contract between the grantors of the Johnson deed and the city of Revere.

We refer to Heddendorf's petition only to point out that, assuming Heddendorf has complied with G. L. c. 184, §§ 26 and 28, and G. L. c. 260, § 31A, such compliance might render the proposed bill unconstitutional. Heddendorf's rights in the Johnson tract are not at stake here. If any such rights exist — and we express no opinion on that matter — by rendering this advisory opinion we do not intend to, nor can we, prejudice them or any other valid interests in the subject parcels of land.

amended to exclude the Caraher parcel[8] from the descrip-
tion of the area authorized for school purposes, we see no
impediments to its constitutionality.[9]

> G. Joseph Tauro
> Paul C. Reardon
> Francis J. Quirico
> Robert Braucher
> Edward F. Hennessey
> Benjamin Kaplan
> Herbert P. Wilkins

[8] The amici brief refers to the Caraher lot as a "comparatively small
area" which is, apparently, unnecessary to use in constructing the pro-
posed school.

[9] Again we draw attention to the factual uncertainties adverted to in
note 7, *supra*, but not before us in this request for an advisory opinion.