Stearns, J.
BACKGROUND
Plaintiffs, who are residents of the City of New Bedford,[4] bring this action pursuant to G.L.c. 40A, §17, and G.L.c. 231 A, §1, appealing a decision of the New Bedford Zoning Board of Appeals that construction of a secondary sewage treatment plant at Fort Rodman, a former military reservation on the New Bedford harbor, does not violate local zoning law. Plaintiffs also ask that the court declare that the property on which the plant is to be built was conveyed to the City of New Bedford subject to a public charitable trust restricting its use to recreational and educational purposes and that an Act of the Legislature authorizing construction of the plant violates Art. I, §10, of the United States Constitution.[5]
FACTS
The case was submitted on a comprehensive statement of agreed facts with numerous supporting exhibits, including construction plans for the treatment plant. The court also took a view of the Fort Rodman site and the surrounding neighborhood and of a model depicting the expected appearance of the plant and the surrounding area upon completion of the project. I have adopted the statement of agreed facts in its entirety and will incorporate it by reference as an integral part of this decision. Because of its length, I will relate only those facts that I think essential to an understanding of the dispute.
Fort Rodman is located at the tip of Clark’s Point at the southernmost end of the City of New Bedford. The Fort is triangular in shape and bordered by the ocean on two sides. A modest but well-maintained residential neighborhood abuts the northern base of the triangle. Fort Rodman is considered of historical significance because it encloses Fort Taber, a pre-Civil War coastal fortification, the defenses of which were reputedly engineered by Robert E. Lee. Apparently never the target of a shot fired in anger, Fort Taber is listed in the National Register of Historic Places.
In 1973, the bulk of the Fort Rodman installation was declared surplus military property and was deeded by the United States to the City of New Bedford to be converted to recreational and educational uses. The United States reserved two acres that house a Naval Reserve Training Center. (Two other parcels within the confines of Fort Rodman had been acquired by the City in 1967). In 1972, the City of New Bedford began operating a primary sewage treatment plant on unzoned landfill fronting Fort Taber. The primary plant, which under stress emanates noxious odors, has been the subject of persistent complaints by neighboring residents. (The primary plant will be de *5 molished and its functions absorbed by the secondary treatment plant if built.)
In 1987, the United States and the Commonwealth of Massachusetts brought suit against the City of New Bedford, alleging that overflow from the Fort Rodman primary plant into New Bedford Harbor violated the Clean Water Act (33 U.S.C. §1311). On August 20, 1987, the City entered into a consent decree requiring that it improve the existing plant and begin construction of a secondary treatment facility. (The decree did not specify the location of the new plant.) On March 30, 1989, then Mayor John Bullard selected Fort Rodman as the site of the secondary treatment plant from a list of three locations recommended by a citizen’s advisory committee. Fort Rodman was ranked last by the committee in desirability. A City consultant, the Environmental Protection Agency, and the Massachusetts Office of Environmental Affairs independently expressed reservations about the choice of the Fort Rodman site. These misgivings notwithstanding, the New Bedford City Council on May 1, 1990, by a six-to-five vote, ratified the mayor’s selection.
In response to an initiative by the Mayor and the City Council, on May 21, 1991, the Legislature enacted a Home Rule Petition (Chapter 74 of the Acts of 1991) authorizing the City of New Bedford to use land at Fort Rodman “which may have been or [was] acquired or used for public park, recreational or educational purposes, for educational, park, public health and other municipal purposes,” including construction of the secondary treatment plant. On May 19, 1992, the City invited Requests for Proposals for construction of the plant. The contract was eventually awarded to the Dick Corporation of Pittsburgh, Pennsylvania.
On June 18, 1992, the plaintiffs’ attorney wrote to the defendant City Building Commissioner (Landre-ville) requesting that he refuse to issue a building permit for the proposed plant. The plaintiffs argued that siting of a sewage treatment plant was incompatible with the zoning requirements for a Residence “A” District.[6] (The parties agree that all of Fort Rodman is zoned Residence “A.”) On June 23, 1992, the Commissioner responded that as a public service building the treatment plant conformed to the applicable zoning law (§9-208(7)). On June 30, 1992, plaintiffs appealed the Commissioner’s determination to the Zoning Board of Appeals. Following a hearing on September 3, 1992, the Board affirmed the Commissioner’s decision. On September 16, 1992, plaintiffs brought this action in the Superior Court. After the action was filed, the National Park Service, the United States Environmental Protection Agency, and the Department of Health and Human Services and Department of Education, released the City from all restrictions (except those protecting the historical integrity of Fort Taber) contained in the federal deeds.
The plant, which is in the midst of site preparation, will occupy approximately a third of the Fort Rodman property. The settling tanks and aeration basins are designed as low profile installations and will be separated from the closest row of residences along Rodney French Boulevard by an Administration and Maintenance building and the existing Naval Reserve Training Center. The plans also include a refurbished soccer grounds and other sports and recreational facilities. Fort Taber and its relocated military barracks are to be maintained as a national historical monument.
DISCUSSION AND RULINGS OF LAW
On judicial review under G.L.c. 40A, §17, the court “hears the matter de novo and determine[s] the legal validity of the decision of the [Zoning Board of Appeals] upon the facts" without deference to the discretion of the Board. Needham Pastoral Counseling Center, Inc. v. Board of Appeals of Needham, 29 Mass.App.Ct. 31, 32 (1990).
New Bedford zoning ordinance §9-208(7) permits the erection in a Residence “A” District of “public service buildings” that “conform to and harmonize with the buildings in the district, provided they are not used, in whole or in part for manufacture, trade, storage or garage.” The term “public service building” is self-defining. It encompasses any publicly owned building providing or supporting an essential municipal service. It is difficult to conceive of a service more critical to the public welfare than the treatment and disposal of waste. Indeed, cities and towns are given special powers to erect sewage disposal works within their boundaries. See G.L.c. 83, §6.
Plaintiffs, while conceding that the sewage treatment plant is a “public service building,” nonetheless contend that its design does not, as §9-208(7) requires, conform to and harmonize with other buildings in the district, and that the plant is unlawfully intended for “storage.” This is, of course, a factual question. Based on my own review of the plans and inspection of the site, I do not find that the proposed plant is discordant with its setting. Fort Rodman is a compact largely self-enclosed reservation, buffered from the residential areas of Clark’s Point by ocean and open space. Fort Rodman already hosts a primary sewage treatment plant (to be demolished upon construction of the secondary plant), a nineteenth-century fortress and battery, military barracks, and a Naval Reserve installation. The low-level design of the plant adds little, if anything, to the existing building profile. In several respects, by increasing the amount of land dedicated to recreational use, by removing the primary treatment plant, and by relocating and refurbishing the Fort Taber complex, the overall pan enhances the visual aspect of Fort Rodman. Nor can I accept plaintiffs’ argument that the plant is intended to “store" waste. This contradicts the plain meaning of the word which in its dictionary sense signifies retention for future use. The plant is not designed to “store” sewage, but to process it for continuing disposal. Compare G.L.c. Ill, §150A.
*6 Plaintiffs also argue that a treatment plant in the Fort Rodman location is (because of noxious odors) a public nuisance and that a zoning ordinance (assuming that §9-208(7) permits siting of the plant) cannot license an otherwise prohibited activity. Marshall v. Holbrook, 276 Mass. 341, 348 (1931). This argument is at best speculative. The advanced design of the secondary treatment plant, if anything, promises less olfactory annoyance to its neighbors than the existing plant with its antiquated grit facility. If the design proves faulty, the Department of Environmental Protection has remedies. See G.L.c. 83, §7.[7]
In sum, I rule that the proposed sewage treatment plant is a “public service building” exempted by operation of §9-208(7) from the zoning restrictions otherwise applicable to a Residence “A” District.[8]
Plaintiffs’ second contention that the City of New Bedford holds title to Fort Rodman subject to a public charitable trust is mistaken as a matter of law. In deciding whether a conveyance establishes a public charitable trust, a court must look to the language of the conveying instrument. Opinion of the Justices, 369 Mass. 979, 984 (1975). Where the grantor specifies that the land be used for a particular purpose “in perpetuity,” see Dunphy v. Commonwealth, 368 Mass. 376, 378 (1975), or “forever,” see Salem v. Attorney General, 344 Mass. 626, 627 (1962), without “a reversion to or a right of entry in the grantor or his heirs,” Opinion of the Justices, supra, 369 Mass at 979, a court will find that the grantor intended to convey a charitable trust. Cohen v. Lynn, 33 Mass.App.Ct. 271, 275 (1992).
The deeds at issue here, conveying the Fort Rodman property to the City of New Bedford each contain a reverter clause revesting title in the United States in the event of a violation of any use restriction.[9] “The creation of a possibility of reverter is inconsistent with an intent to create a public trust in perpetuity.” Opinion of the Justices, supra, 369 Mass, at 984-85. Moreover, a series of releases given to the City of New Bedford by the United States (and other interested governmental parties) relieved the City of all covenants and restrictions in the original deeds (except those affecting Fort Taber) with the express intention of removing any obstacles in the City’s title that might have impeded construction of the plant. Cf. Cohen v. Lynn, supra, 33 Mass.App.Ct. at 275. Because I rule that the land in question is not impressed with a public trust, I need not address plaintiffs’ contention that Chapter 74 of the Acts of 1991, authorizing construction of the plant on the Fort Rodman site, violates Article I, §10 of the United States Constitution.[10]
ORDER
For the foregoing reasons, it is ADJUDGED and DECLARED that:
(1)The City of New Bedford is in compliance with its zoning ordinance by reason of the fact that the Fort Rodman secondary wastewater treatment plant is a public service building within the meaning of §9-208(7) of the Code of Ordinances of the City of New Bedford;
(2) That no charitable trust has been established by conveyances made by the United States of America, and that the City of New Bedford has secured and holds valid releases from the relevant restrictions contained in the instruments of conveyance;
(3) That no constitutional issue is raised by the enactment of Chapter 74 of the Acts of 1991 affecting construction of the secondary treatment plant; and
(4) That the City of New Bedford has properly obtained all permits and permissions required for the construction of the Fort Rodman secondary wastewa-ter treatment facility.

 Plaintiffs Silva, Metcalfe, Goulart, Kelleher and Duart own property abutting Fort Rodman.

 Plaintiffs also allege that the City intends to proceed with construction without obtaining a building permit, a zoning variance, or a wetlands Order of Conditions. I am satisfied from the record that a proper building permit and an Order of Conditions have been issued. For reasons that will become apparent, I agree with defendants that a zoning variance is not required. Nor do I give much weight to the suggestion made by plaintiffs at oral argument that the transfer of land by one City department to another for purposes of constructing the plant was tainted because of a failure to comply with G.L. 40, §15 (even assuming that there is evidence from which I could conclude that portions of the land at Fort Rodman were under the jurisdiction of the Park Board, the School Committee, or the Recreation Department). See Omartian v. Mayor of Springfield, 354 Mass. 439, 444 (1968). Cf. Harris v. Wayland, 16 Mass.App.Ct. 583, 585 (1983).

 City of New Bedford Zoning Code §9-208 provides in relevant part:
Within any Residence “A” district, as indicated on the building zone map, no premises shall be used . . . and no building or structure shall be erected which is intended or designed to be used, in whole or in part for industry, trade, manufacture, commerce, or for other than one or more of the following specified purposes: . . .
(7) Public service buildings, if constructed to conform to and harmonize with the buildings in the district, provided they are not used for manufacture, trade, storage or garage.

 Plaintiffs’ final argument that the plant does not comply with the set back provisions of §§9-211 and 9-212 of the zoning by-law I find untenable. These provisions clearly do not apply to exempted structures (e.g. cemeteries, farms, schools, and public service buildings).

 The City makes a not uncompelling argument that it is exempt from its own zoning laws to the extent that it functions as an adjunct of the state and federal governments in carrying out the terms of the consent decree that commands construction of the plant. See County Commissioners of Bristol v. Conservation Commission of Dartmouth, 380 Mass. 706, 715 (1980); Inspector of Buildings of Salem v. SalemState College, 28 Mass.App.Ct. 92, 97 (1989). On the other hand, the City was not mandated to choose the Fort Rodman site by terms of the decree. That this was left to the City’s discretion permits *7 the argument that the City under the circumstances has a duty to obey its own laws. See Building Commissioner of Medford v. The C.&H. Co., 319 Mass. 273, 283 (1946); Pierce v. Wellesley, 336 Mass. 517, 523-24 (1957). In light of my ruling that the plant is exempt under the zoning laws, I need not choose between the two plausible arguments.

The United States also reserved the right to retake possession of the property “without restriction” in the event of a national emergency.

Defendants in their brief maintain that this issue in any event is not properly before the court as plaintiffs had failed to comply with G.L.c. 231A, §8, by giving notice of their constitutional challenge to the Attorney General. On May 4, 1993, after the defendants’ brief was filed, plaintiffs rectified the procedural oversight by serving notice on the Attorney General. The court stayed the proceedings to permit the Attorney General to respond. On June 7, 1993, the Attorney General filed a memorandum supported by the affidavit of John G. Casagrande Jr., Esq. , the City’s legal representative (detailing the various releases given by the United States to the City of New Bedford). The Attorney General agrees with the City that because no public trust exists, Article I, §10, does not render legislative enactment of the Home Rule Petition void.