HENRY A. COHEN & others[1] *vs.* CITY OF LYNN
& another[2]
(and a companion case).

No. 90-P-1105.

Essex. December 17, 1991. - September 8, 1992.

Present: PERRETTA, JACOBS, & GILLERMAN, JJ.

*Trust*, What constitutes, Creation, Construction, Charitable trust, Public trust, Cy pres. *Parks and Parkways. Municipal Corporations*, Parks, Trusts. *Gift. Contract*, Municipality.

In an action seeking a declaration that a city's conveyance of a certain parcel of land to a private developer violated the city's obligations under a public charitable trust that the plaintiffs claimed arose in 1893 when the parcel was acquired by deeds stating that the land was to be used "forever for park purposes," the judge correctly concluded that, in the circumstances, a public charitable trust arose from the 1893 conveyances and that the acceptance of the deeds by the city "constituted a contract between the [donors] and the [city] which must be observed and enforced." [274-277]

In an action seeking a declaration that a city's conveyance of a certain parcel of land to a private developer violated the city's obligations under a public charitable trust that the plaintiffs claimed arose in 1893 when the parcel was acquired by deeds stating that the land was to be used "forever for park purposes," the judge's findings, none of which was clearly erroneous, amply supported his conclusion that the city and the developer failed to demonstrate that it had become impossible or impracticable to carry out the original park purposes of the 1893 conveyances; consequently, the doctrine of cy pres was not to be applied to allow the conveyance to the developer. [277-279]

Where a city had assumed certain contractual obligations under a public charitable trust arising in 1893 when a parcel of land was acquired by the city by deeds reciting that the land was to be used "forever for park purposes," special legislation (St. 1983, c. 326) authorizing the city to sell and convey the parcel to a private developer could neither impair the city's trust obligation, nor ratify the purported conveyance. [279-280]

---

[1] And twenty-three other persons, at least ten of whom are taxpayers and residents of the city of Lynn.

[2] Saul Gilberg, trustee of Broad Street Trust.

CIVIL ACTIONS commenced in the Superior Court Department on August 5, 1983, and in the Essex Division of the Probate and Family Court Department on August 19, 1983, respectively.

The cases were consolidated and heard, on a statement of agreed facts, by *Richard S. Kelley*, J., sitting under statutory authority.

*Mary P. Harrington* for Saul Gilberg.

*George S. Markopoulos*, Assistant City Solicitor, for the city of Lynn.

*George E. Richardson* for the plaintiffs.

JACOBS, J. The plaintiffs challenged the conveyance to a private developer (Gilberg) in 1982 of a 17,538 square foot parcel of land, adjacent to Lynn Shore Drive, claimed by the city of Lynn to be no longer usable for park purposes. The land had been transferred with the approval of the mayor and city council. Subsequent to the delivery of the deed, the Legislature, by enactment of St. 1983, c. 326, purportedly authorized the conveyance of the parcel by private sale. In their "ten taxpayers" complaint in the Superior Court,[3] the plaintiffs sought a judgment declaring that the conveyance violated the city's obligations under a public charitable trust which they claimed arose in 1893 when the parcel was acquired by deeds which state the land is to be used "forever for park purposes."[4] They sought to force the city to forever

---

[3]Pursuant to G. L. c. 214, § 3(10), as appearing in St. 1973, c. 1114, § 62, the Superior Court has jurisdiction of an action "to enforce the purpose or purposes of any gift or conveyance which has been . . . accepted by any . . . city . . . for a specific purpose or purposes in trust or otherwise, or the terms of such trust, or, if it shall have become impracticable to observe or carry out such purpose or purposes, or such terms, or, if the occasion therefor shall have terminated, to determine the purposes or uses to which the property involved shall be devoted and enforce the same. Such action shall be commenced only by the attorney general or, with leave of court, by ten taxpayers of such . . . city . . . . In the case of an action by ten taxpayers as aforesaid, the attorney general . . . may intervene as a party at any stage of the proceedings . . . ." See generally *Athas* v. *Mayor of Holyoke*, 356 Mass. 382, 384-385 (1969); *Pratt* v. *Boston*, 396 Mass. 37, 45 & n.9 (1985).

[4]The parcel is bounded by public ways and is part of a three and one-half acre tract acquired by the city of Lynn in 1893 from two grantors

"hold, manage, use and allow use" of the parcel for public parkland. They also requested an order rescinding the conveyance to Gilberg and requiring him to restore the parcel to its condition prior to his acquisition of it.[5] After the plaintiffs were granted leave to pursue their action in the Superior Court under G. L. c. 214, § 3(10), the city and Gilberg filed a complaint in the Probate Court for application of cy pres. An order of the Chief Administrative Justice of the Trial Court assigned a judge to sit simultaneously as a justice of the Probate and Superior Courts to hear and decide these cases, consolidated in the Superior Court, pursuant to G. L. c. 211B, §§ 3 and 9. The Attorney General later was permitted to intervene as a party.

The case was submitted to the judge, sitting without jury, on the basis of certain stipulated facts, exhibits, and pretrial discovery. After taking a view, the judge issued a memorandum of decision and order in which he concluded that the parcel was still impressed with the public charitable trust originally established, and it had not been demonstrated that it had become impossible or impracticable to carry out the trust purposes. He expressly found that the parcel possessed "a beautiful scenic ocean view" and was "suitable for park purposes." He also found that at the time of the purported

---

pursuant to a recommendation of the city's park commissioners. The tract was thereafter leased to the Metropolitan Park Commission, the predecessor of the Metropolitan District Commission (MDC), for ninety-nine years, beginning in 1907. The former Commission then constructed Lynn Shore Drive as a part of a park system now extending from Nahant to Swampscott, thereby separating the parcel at issue from the waterfront portion of the original tract. In 1981, the city council of Lynn voted to authorize sale of the parcel to Gilberg upon relinquishment by the MDC of any of its interest. The city council and mayor authorized the sale to Gilberg in December, 1981, and a deed was executed on January 5, 1982, for "nominal consideration." The MDC, under authority of St. 1981, c. 753, and by an instrument dated May 24, 1982, relinquished all its right, title, and interest in the parcel. Subsequently, St. 1983, c. 326, authorized the city to sell and convey the parcel at a private sale.

[5]Gilberg commenced construction of a parking lot after the parcel was conveyed to him. He suspended construction pursuant to an agreement negotiated by the Attorney General, who later became a party to the litigation.

conveyance to Gilberg the parcel "was a popular area for walkers, riders, and joggers" and "provided a scenic vista of open space suitable for park purposes and reinforced the 'greenness' of the area." He further concluded that the trust obligations could not be impaired by the enactment of special legislation purporting to authorize the city to convey the parcel at a private sale and declared the conveyance to Gilberg null and void. He ordered restoration of the parcel to its pre-1982 condition.

The city and Gilberg appeal from the consolidated judgment entered in accordance with the judge's findings and conclusions. They claim that the judge misinterpreted the terms of the 1893 conveyance and improperly construed the concept of park purposes and, therefore, erroneously concluded that a trust was established, and that its terms can still be carried out. They argue that even if a trust was established, only a general charitable intent was evident; that compliance with the original terms is today impracticable; and that the doctrine of cy pres should be applied to determine that the conveyance to Gilberg, and the development and use he proposed, bring the conveyance within the original purposes of the trust. We affirm the judgment.

1. *Was a Public Charitable Trust Established?*[6]

Each of the two deeds by which the city of Lynn acquired title states in the habendum clause, "to the . . . [c]ity of Lynn to its own use and behoof forever for park purposes."

---

[6]In his decision, the judge stated, "All parties agree, as they must, that the language contained in the 1893 conveyance[s] . . . established a public charitable trust . . . ." The city and Gilberg argue that the issue was not conceded below. Since all parties have fully briefed the matter and no suggestion of prejudice has been raised, see *Royal Indemn. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977), we have reviewed the issue. All the evidence submitted to the judge consisted of documents which we have before us. Therefore, "[w]e stand in the same position as did the trial judge in determining the nature of the title vested in the [city]." *Lowell* v. *Boston*, 322 Mass. 709, 715 (1948). The factual findings of the judge relating to the cy pres aspect of this proceeding, aided by his physical view of the parcel, implicate a different standard of review — whether the findings are clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 429-430 (1980).

Since the deed of one grantor cites the proposed conveyance by the other grantor of the adjacent land to the city, we treat the conveyances as constituting a single declaration of trust. See *Bourgeois* v. *Hurley*, 8 Mass. App. Ct. 213, 218 (1979). "Property conveyed to a governmental body . . . for particular public purposes may be subject to an enforceable general public obligation or trust to use the property for those purposes." *Nickols* v. *Commissioners of Middlesex County*, 341 Mass. 13, 18 (1960), and authorities cited. Whether a trust or obligation is imposed is "a matter of interpretation of the particular instrument and determination of the particular donors' intent[,]" and "is to be ascertained from a study of the instrument[s] as a whole in the light of the circumstances attending . . . [their] execution. Search should be made for a general plan . . . designed to express a consistent and harmonious purpose." *Nickols* v. *Commissioners of Middlesex County*, *supra* at 19, quoting from *Jewett* v. *Brown*, 319 Mass. 243, 248 (1946). See *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 229 (1980); *Hillman* v. *Roman Catholic Bishop of Fall River*, 24 Mass. App. Ct. 241, 243 (1987).

The conveyances in the present case contain direct and unambiguous language, clearly declaring that the grantors divested themselves of all their interests in the land "forever for park purposes." Similar conveyances of land for parks, where the grantors specified the land be used "forever" or "in perpetuity," without other limitation, have been found to establish a public charitable trust. See *Salem* v. *Attorney Gen.*, 344 Mass. 626, 629-631 (1962); *Dunphy* v. *Commonwealth*, 368 Mass. 376, 383 (1975); *Opinion of the Justices*, 369 Mass. 979, 985-986 (1975); *Newburyport Redev. Authy.* v. *Commonwealth*, *supra* at 229-230; *Hillman* v. *Roman Catholic Bishop of Fall River*, *supra* at 244-245. There is here no precatory language; no mere statement of a use only; no condition or limitation on the use; nor any right of reversion. Compare *Loomis* v. *Boston*, 331 Mass. 129, 132 (1954); *Dunphy* v. *Commonwealth*, *supra* at 378; *Opinion of the Justices*, *supra* at 983-985; *Newburyport Redev. Authy.*

v. *Commonwealth, supra* at 230. See generally *Selectmen of Provincetown* v. *Attorney Gen.,* 15 Mass. App. Ct. 639, 642-643, 644-645 & nn. 6-8 (1983).

The city and Gilberg suggest that since the grantors received substantial payment for the land in 1893, the conveyance was not a gift and, therefore, no trust was established. The record indicates that the city council appropriated $12,000 toward the $20,000 purchase price on the condition that the remaining $8,000 be raised by public subscription. The latter amount was obtained from "property owners near the beach, and by a few public spirited citizens" and included $1,500 donated by the grantors. We have found no authority, nor is any cited to us,[7] to the effect that the receipt of substantial consideration prevents a grantor from conveying property to a municipality in such manner as to establish a public charitable trust. Generally, the creation of a trust may be supported by consideration "in the sense that the beneficiary confers a benefit on the settlor in order to obtain from him the creation of the trust." Bogert, Trusts and Trustees § 202, at 8-9 n.8 (2d ed. rev. 1992). Moreover, the grantors' monetary contribution in effect establishes that the conveyance, in part, was a gift. In any event, the record does not indicate that the payment to the grantors represented fair market value. This case must be distinguished from decisions denying trust status to conveyances made for substantial consideration "in fee simple forever" and which recited "no specific purpose . . . in the deeds . . . ." *Jacobson* v. *Parks & Recreation Commn. of Boston,* 345 Mass. 641, 643 (1963). See *Brooks* v. *Boston,* 334 Mass. 285, 286 (1956).

The circumstances attending the conveyances to the city evidence a general plan to dedicate the land permanently to public park purposes. During much of the time it was pri-

---

[7]*Loomis* v. *Boston,* 331 Mass. 129 (1954), relied on by Gilberg and the city, is distinguishable. In that case, the land was conveyed to the city of Boston for substantial consideration "for the purposes of a public park," *id.* at 130, but without words of perpetual dedication, and was later taken by eminent domain. It was held under those circumstances that the words of conveyance may only have stated a use and did not create a trust. *Id.* at 132.

vately owned, the land had been vacant and open to the public. In 1891, the city's park commissioners wrote in their annual report that the owners "are willing to sell this land to the city at [a] reasonable price, if dedicated to public use." They described a less desirable alternative for the city: "It is evident that the time is not far distant when the owners will seek to recover the sum annually paid in taxes for many years, and will sell the land in small lots or make such improvements as may exclude the public." In their 1892 annual report, the commissioners stated the land was to be "secured for public enjoyment forever." The "general plan" and expression of a "consistent and harmonious purpose" are evident. See *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. at 19. The judge correctly concluded that a public charitable trust arose from these conveyances and that the acceptance of deeds by the city, "constituted a contract between the donor and the donee which must be observed and enforced." *Salem* v. *Attorney Gen.,* 344 Mass. at 631. Accord *Dunphy* v. *Commonwealth,* 368 Mass. at 383; *Opinion of the Justices,* 369 Mass. at 982-983, 988; *Newburyport Redev. Authy.* v. *Commonwealth,* 9 Mass. App. Ct. at 230.

2. *Has It Become Impracticable to Carry Out the Trust Purposes?*[8]

The city and Gilberg argue that it has become impossible or impracticable to carry out the trust purposes, claiming the city's objective in acquiring the three and one-half acre tract was to provide public access to the shore, and that the construction of Lynn Shore Drive achieved that objective. They maintain also that the cutting off of the parcel at issue leaves it too small to be usable for park purposes and that it now has only "ornamental" value. They therefore ask that the doctrine of cy pres be applied to allow the conveyance to Gilberg.

---

[8]Since we conclude that it is not impracticable to carry out the park purposes of the trust in this case, it is unnecessary to determine whether Gilberg's proposed use would conform with the general charitable intent of the trust terms. See *Milton* v. *Attorney Gen.,* 314 Mass. 234, 238-239 (1943); *Selectmen of Provincetown* v. *Attorney Gen.,* 15 Mass. App. Ct. 639, 646 (1983).

Mere physical access to the shore was not the only objective of the city's acquisition of the three and one-half acre tract. The park commissioners in 1891 also ·wanted to acquire "more open air space" and to avoid the potential exclusion of the public if the tract remained in private ownership. In their 1892 annual report, the commissioners, anticipating the construction of Lynn Shore Drive, describe a highway which would promote public enjoyment of the "views" and "sea breezes."

While we find no precise and widely accepted definition of "park" or "park purposes," we believe the expansive view expressed by the park commissioners to be in accord with the general definition of the authorities. "[T]he term 'park' usually signifies an open or inclosed tract of land set apart for the recreation and enjoyment of the public; or, 'in the general acceptance of the term, a public park is said to be a tract of land, *great or small*, dedicated and maintained for the purposes of pleasure, exercise, amusement, *or ornament*; a place to which the public at large may resort to for recreation, *air, and light*' " (emphasis supplied). *Salem* v. *Attorney Gen.*, 344 Mass. at 630, quoting from *King* v. *Sheppard*, 157 S.W.2d 682, 685 (Tex.Civ.App. 1941). Similar themes were expressed in decisions rendered at approximately the time of the conveyances in question. See *Shoemaker* v. *United States*, 147 U.S. 282, 297 (1893) (virtually every city and town is planning parks "as a pleasure ground for rest and exercise in the open air"); *Attorney Gen.* v. *Williams*, 174 Mass. 476, 479-480 (1899) ("[parks] are expected to minister, not only to the grosser senses, but also to the love of the beautiful in nature . . . . If wisely planned and properly cared for they promote the mental as well as the physical health of the people"). Gilberg and the city in effect ask that the active aspects of recreation be stressed, and specifically argue that park purposes should not be defined so broadly as to include "ornamental" uses. Given the scope which authorities have given to the meaning of "park," we decline the invitation to apply a narrow definition. Compare *Catanzarite* v. *Springfield*, 32 Mass. App. Ct. 967 (1992).

The argument that the parcel is too small to serve park purposes is belied by the judge's findings that it was being used, at the time of the purported conveyance to Gilberg, for exercise and recreation and provided pleasant vistas including "a beautiful scenic ocean view."[9] The judge's finding that the parcel "provides a buffer zone between private use and the ocean" supports the conclusion that the parcel continues to satisfy an important objective of the original acquisition. Even in the absence of these findings, the judge's observation that the parcel constitutes a "green edge to the parkway" which "reinforced the greenness of the area" alone might well support his conclusion. By ornamenting the parkway and making the general area pleasing to the eye, the parcel serves park purposes. See *Howe* v. *Lowell*, 171 Mass. 575, 580-581 (1898); *Hamlen* v. *Sorkin*, 251 Mass. 143, 150-151 (1925). In sum, the judge's findings, none of which is clearly erroneous, amply support his conclusion that the city and Gilberg have not demonstrated that it had become impossible or impracticable to carry out the original park purposes of the 1893 conveyances.

3. *Could the Conveyance Effectively be Authorized by the Legislature or City Officials?*

It has long been held that the contract obligations arising from a charitable trust such as exists in the present case cannot be impaired legislatively. *Cary Library* v. *Bliss*, 151 Mass. 364, 378-380 (1890). *Adams* v. *Plunkett*, 274 Mass. 453, 462-464 (1931) (A conveyance conditional upon perpetual use of the property as a hospital imported a contract obligation. "[T]he sanctity of [such a contract] [i]s under the protection of art. 1, § 10, of the Constitution of the United States . . . "). The special legislation authorizing the city to sell and convey could therefore neither impair the trust obli-

---

[9]Gilberg has also argued that the small size of the parcel itself makes it unusable for park purposes, inaptly citing *Wright* v. *Walcott*, 238 Mass. 432 (1921). The present case is not one where land *acquired free of trust* may be diverted to another public use by legislative mandate. *Id.* at 435. See generally *Robbins* v. *Department of Pub. Works*, 355 Mass. 328, 330-331 (1969), and authorities cited; *Brookline* v. *Metropolitan Dist. Commn.*, 357 Mass. 435, 439-441 (1970).

gation, nor ratify the purported conveyance. See *Salem v. Attorney Gen.*, 344 Mass. at 631; *Dunphy v. Commonwealth*, 368 Mass. at 383; *Newburyport Redev. Authy. v. Commonwealth*, 9 Mass. App. Ct. at 230. "The policy of the Commonwealth has been to add to the common law inviolability of parks express prohibition against encroachment . . . . The firmly settled and frequently declared policy of the Legislature heretofore has been to preserve public parks free from intrusion of every kind which would interfere in any degree with their complete use for this public end. It cannot be assumed that this policy is to be lightly thrown aside." *Brookline v. Metropolitan Dist. Commn.*, 357 Mass. 435, 439 (1970), quoting from *Higginson v. Treasurer & Sch. House Commrs. of Boston*, 212 Mass. 583, 591-592 (1912).

*Judgment affirmed.*