Museum of Fine Arts *vs.* Elizabeth Beland, & others,[1]
trustees,[2] & others.[3]

Suffolk. September 12, 2000. - October 11, 2000.

Present: Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Devise and Legacy,* Charitable trust. *Trust,* Charitable trust, Construction, Cy
pres, Trustee's authority.

A Superior Court judge correctly interpreted the unambiguous provisions of a
   bequest to mean that the trustees who possessed the bequeathed paintings
   were not permitted to sell them. [542-544]
Neither the doctrine of cy pres nor the doctrine of reasonable deviation was
   properly applicable to a bequest the purpose of which was not shown to be
   impracticable or impossible to carry out. [544-545]

Civil action commenced in the Superior Court Department on
May 13, 1998.

The case was heard by *Margaret R. Hinkle,* J., on motions for
summary judgment, and the matter was reported to the Appeals
Court by *Gordon L. Doerfer,* J. The Supreme Judicial Court
granted requests for direct review.

*Richard W. Renehan (Debra Squires-Lee* with him) for
Elizabeth Beland.

*Johanna Soris,* Assistant Attorney General *(Eric Carriker,*
Assistant Attorney General, with her) for Attorney General.

*Andrew C. Griesinger (Mona M. Patel* with him) for the
plaintiff.

*Debra Rahmin Silberstein* for Arts for Lawrence, Inc., amicus
curiae, submitted a brief.

Greaney, J. This is an action brought under G. L. c. 231A by
the Museum of Fine Arts (MFA), seeking a declaration that the
will of the late Reverend William E. Wolcott (Wolcott) does not

---

[1]Robert J. Frishman and Thomas F. Caffrey.

[2]Under indenture of trust dated August 23, 1852, between Daniel A. White
and others, as trustees.

[3]The White Fund, Inc., and the Attorney General.

allow the defendants to sell any of the seventeen paintings that were bequeathed to a charitable trust. The record establishes the following relevant undisputed facts. Wolcott died in 1911. In his will, executed on June 20, 1907, Wolcott bequeathed seventeen paintings, including paintings by Eugene Boudin, Camille Pissarro, and Claude Monet, to the trustees of The White Fund (trustees), a charitable trust.[4] The provisions of the bequest read as follows:

"3.  Whenever the pictures or any part of them shall come into the actual possession of the said Trustees, they shall offer the same for purposes of exhibition to the Museum of Fine Arts in the City of Boston, unless they shall determine otherwise in accordance with the discretion confirmed on them in the following paragraph:

"4.  If at the time of my decease or at any subsequent time there shall exist within the present limits of the city of Lawrence a public art gallery housed in a fire-proof building and under such management as the Trustees of the White Fund shall approve, the said Trustees may deposit the aforesaid pictures with such art gallery for purposes of exhibition.

"5.  The ownership and control of the pictures shall be vested permanently and inalienably in trust nevertheless, as aforesaid, in said Trustees of the White Fund and their successors.

"6.  My purpose in making this bequest is to create and gratify a public taste for fine art, particularly among the people of the City of Lawrence. And I give to the said Trustees of the White Fund full and absolute authority in any contingency not fully provided for in the above stipulations to take such action as they judge best fitted to serve the purpose described."

In the years after Wolcott's death, the trustees came into possession of, and offered, the paintings to the MFA for exhibition.

---

[4]The White Fund Trust was established in 1852 by Daniel A. White and is governed by an indenture of trust dated August 23, 1852. In 1982, The White Fund was incorporated under Massachusetts law as The White Fund, Inc., a charitable corporation.

Currently, the MFA possesses all seventeen paintings, and regularly exhibits three of them. The remaining fourteen paintings are in storage, and the MFA does not plan to exhibit them in its galleries. The fourteen paintings held in storage are available, in certain circumstances, to be shown to persons interested in viewing them.

After learning that the trustees wanted to sell some or all of the paintings, the MFA brought this action in the Superior Court seeking a declaratory judgment, for purposes relevant here, that the terms of Wolcott's bequest do not permit the trustees to sell any of the paintings. The MFA moved for summary judgment, and the Attorney General, a necessary party to the litigation, see G. L. c. 12, § 8, filed a cross motion for partial summary judgment. The trustees filed a memorandum in support of the Attorney General's motion. A Superior Court judge allowed the MFA's motion in part, concluding that the provisions of Wolcott's bequest do not permit the trustees to sell the paintings. As to the Attorney General's claim that the primary purpose of the charitable trust created by the bequest was not being satisfied, and that the bequest should therefore be modified under the doctrines of cy pres or reasonable deviation, the judge concluded that (1) as to the three paintings currently exhibited, Wolcott's intent was being carried out; and (2) as to the fourteen paintings not being exhibited, a trial was necessary to decide whether the trustees should be allowed to sell the paintings through cy pres. She therefore denied the Attorney General's motion for partial summary judgment. Pursuant to G. L. c. 231, § 111, and Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), another judge in the Superior Court entered a judgment and reported the propriety of the orders to the Appeals Court. We allowed the defendants' applications for direct appellate review. We conclude that the MFA is entitled to summary judgment, that the bequest does not permit the trustees to sell any of the paintings, and that, as a consequence, a trial is not necessary. We shall direct that an appropriate declaration be entered in the case.

1. The trustees argue that, under the express terms of Wolcott's bequest, they have the complete power to sell the paintings. They maintain that this power comes into play because Wolcott's intent, "to create and gratify a public taste for fine art, particularly among the people of the City of Lawrence," is not being fulfilled in any meaningful way by the exhibition of only three paintings at the MFA. Consequently,

pursuant to the "full and absolute authority" conferred on them under paragraph 6 of the bequest, the trustees conclude that they are authorized to sell the paintings. We disagree.

An effort to determine Wolcott's intent by extrinsic evidence is unnecessary because the provisions of the bequest are not ambiguous.[5] See *First Nat'l Bank* v. *Shawmut Bank*, 378 Mass. 137, 144 (1979); *Adams* v. *Peterson*, 35 Mass. App. Ct. 782, 785 (1994). Paragraph 5 of the bequest states: "The ownership and control of the pictures shall be vested permanently and inalienably . . . in [the] Trustees." The judge correctly interpreted the meaning of the words in this paragraph by the application of commonly accepted rules. See *Longy Sch. of Music, Inc.* v. *Pickman*, 344 Mass. 511, 513 (1962), and cases cited. Contrary to the trustees' assertions, the judge did not "overlook" a secondary meaning of the term "inalienable." The contention that Wolcott must have intended the word "inalienable" to be used in the bequest the same way as the word had been used in the Declaration of Independence is not persuasive. The judge properly concluded that "the phrase 'permanently and inalienably' in the will means exactly what it says — the Trustees are to have *permanent* possession and control of the paintings" (emphasis in original). The bequest makes clear that the paintings may not be sold by the trustees.

The trustees read too much into the discretion conferred on them by paragraph 6 of the bequest. While the provision grants to the trustees "full and absolute authority . . . to take such action as they judge best fitted," that authority is expressly limited, and the power becomes operative only in the event "any contingency [is] not fully provided for in the [earlier paragraphs or the bequest]." The record establishes that no such contingency has yet occurred. As provided in paragraph 3, the MFA has accepted the paintings and regularly exhibits three of them. Although fourteen of the paintings are normally kept in storage, the MFA has not refused to make the paintings available for

---

[5]The judge should have allowed the MFA's motion to strike the affidavit of Elizabeth Nordbeck and portions of the affidavit of Jock Reynolds. Nordbeck is the dean of the Andover Newton Theological School. She opined that Wolcott's bequest was intended to benefit the citizens of Lawrence and that he would have preferred that the paintings be sold. Reynolds is a museum director who opined that a sale of all or some of the paintings would not detract from Wolcott's purpose. The material in the affidavits stated inadmissible opinions concerning Wolcott's intent. See *Schwartz* v. *BayBank Merrimack Valley, N.A.*, 17 Mass. App. Ct. 169, 176 (1983). See also *Calder* v. *Bryant*, 282 Mass. 231, 239 (1933).

exhibition,[6] and, although not required to do so, the MFA has continued to insure and protect the paintings.

2. We reject the defendants' argument that either the doctrine of cy pres or the doctrine of reasonable deviation[7] should be applied to the bequest because it is impracticable or impossible to carry out its purpose. The defendants maintain that Wolcott's primary purpose was to promote fine art, particularly for the people of Lawrence. They assert this purpose is not being fulfilled because exhibition of only some of the paintings at the MFA does not benefit the people of Lawrence, and because there is little likelihood that an art gallery suitable to exhibit the paintings will be built, or can be acquired, in Lawrence.

Wolcott's expressed general charitable intent was "to create and gratify a public taste for fine art," through the auspices of the MFA, with a preference that the people of Lawrence enjoy the paintings. The inability to exhibit in Lawrence the three paintings currently on display at the MFA provides no support for the defendants' argument. Those paintings are on display in a manner that accords with the provisions of paragraph 3 of the bequest and Wolcott's general intent.

The current inability to exhibit the other fourteen paintings in Lawrence would not justify the application of cy pres or reasonable deviation to sell the paintings. A sale of the fourteen paintings would be the antithesis of Wolcott's intent because the sale could deprive the public of any opportunity to view them. There is information in the record suggesting that it might be possible to display some or all of the fourteen paintings at a gallery in Lawrence or at a fine arts center in nearby Andover. Besides these locations, there may be other suitable sites that are close enough to Lawrence to warrant loosening the geographic restrictions in the bequest to permit exhibition of some or all of the

[6]The MFA has exhibited these paintings in response to requests. In January, 1990, all the paintings were exhibited to persons from the Lawrence area. After the decision of the Superior Court, a Lawrence-based group hosted another visit to the MFA to see all the paintings. Further, the MFA allows the viewing of any painting in storage on request.

[7]Under the doctrine of reasonable deviation, "[t]he court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust." Restatement (Second) of Trusts § 381 (1959). See *Trustees of Dartmouth College* v. *Quincy*, 357 Mass. 521, 531 (1970).

fourteen paintings. The record shows that the trustees have not made reasonable efforts to explore alternative locations for exhibition. Until such efforts are made, and are shown to be futile, there is no need for further proceedings on the issue whether cy pres would apply to allow sale of the fourteen paintings in storage. See *Davenport* v. *Attorney Gen.*, 361 Mass. 372, 376-377 (1972); *Cohen* v. *Lynn*, 33 Mass. App. Ct. 271, 279 (1992). The MFA seeks only a declaration that the paintings not be sold. On this record, it is entitled to that declaration.

3. The judgment entered on September 7, 1999, is vacated. Orders are to be entered in the Superior Court allowing the MFA's motion for summary judgment and denying the Attorney General's motion for partial summary judgment. A judgment is to be entered declaring that the doctrines of cy pres and reasonable deviation do not apply, and that none of the paintings held by the trustees that are the subject of the bequest can be sold.

*So ordered.*