Rufo, Robert C., J.
This action was brought by the plaintiffs as taxpayers of the Town of Mattapoisett under the provisions of G.L.c. 214, §3(10) seeking to enforce the purpose or purposes of a gift of a 20.5-acre parcel of land in trust to the Town of Mattapoisett by deed of Nelson Floyd Tinkham dated November 26, 1968. The plaintiffs also seek declaratory relief under the provisions of G.L.c. 231A that a May 2004 Mattapoisett Town Meeting vote to exchange the 20.5-acre parcel for a total of over 400 acres with private developers so as to permit the 20.5-acre parcel to be used for residential purposes, contravenes the fiduciary obligations of the Town of Mattapoisett. In the companion case, the Town of Mattapoisett brought a “Cy Pres” Complaint against Thomas F. Reilly, the then Attorney General of the Commonwealth of Massachusetts seeking authorization for the Town of Mattapoisett to undertake an exchange of the 20.5-acre parcel of land received from Nelson Floyd Tinkham in 1968 with private developers in return for just over 400 acres of land situated in the Towns of Mattapoisett and Marion, Massachusetts.
*636 By Order of Assignment from the Chief Justice for Administration and Management dated April 24, 2006, this court has been authorized to sit simultaneously as a Justice of the Superior Court and the Probate and Family Court Department to further the orderly processing of each of the above referenced matters.[4] This court’s decision will address the issues raised in both the Superior Court and the companion Probate and Family Court action.

FINDINGS OF FACT

Shortly after the trial commenced, the court took an extensive view of the subject property with counsel for the plaintiffs and defendants. After a trial without jury conducted from April 2, 2007 through April 6, 2007 and based upon all the credible evidence, including the testimony of fourteen (14) witnesses and thirty-seven .(37) exhibits admitted at trial, drawing such fair inferences as I find to be reasonable, and resolving questions of credibility where they occur, I find the following material facts.

The Parties

The plaintiffs, Allen F. Tinkham and Robert C. Tinkham are residents of Newington, Connecticut and Carver, Massachusetts respectively and are the sons of Nelson Floyd Tinkham who died on April 26, 1975. The plaintiffs, Michele C. Bernier, Ann M. Briggs, Lori A. Briggs, Peter R. Cadden, Frances A. Cairns, Bradford A. Hathaway, Peter M. Martin, Florence M. Martocci, Donald K. Marvin, Josephine M. Pannell, Diane H. Perry, David W. Peterson, George P. Randall, Madeline J. Reid, Manuel C. Rosenfield, James L. Sullivan, Patricia A. Tapper, Robert F. Tapper, Jr. and Barbara K. Welling are residents and taxpayers of Mattapoisett. The plaintiff Heather Hobler-Keen is a resident of Boston and a taxpayer of Mattapoisett.
The defendant Town of Mattapoisett (“Town”) is a municipal corporation located in Plymouth County, Massachusetts. The defendant Dennis Mahoney & Sons, Inc. is a Massachusetts corporation with a usual place of business in Massachusetts and the defendant Bay Club of Mattapoisett, LLC is a Massachusetts limited liability company with a usual place of business in Massachusetts.[5]

The Property

On November 26, 1968, Nelson Floyd Tinkham (“N.F. Tinkham” or “Mr. Tinkham”) conveyed a 20.5-acre parcel of land located in the woods east of North Street to the Town by deed which is recorded with Plymouth County Registry of Deeds in book 3488, page 732 (“the Properly” or “Tinkham Forest”). (Ex. 1.) N.F. Tinkham’s deed to the Town provided that the 20.5-acre parcel would thereafter be known as the “N.F. Tinkham Forest.”[6] The deed was drafted by Leonard E. Perry, who was Mattapoisett Town Counsel in 1968. At the time of N.F. Tinkham’s gift in 1968, the Town was heavily forested and sparsely populated. The area extending east from North Street to the Marion town line and north from present day Route 6 to Rochester was referred to by residents of the Town as the “Town Forest,” although the various parcels within the Town Forest were privately-owned “wood lots,” used to supply fire wood for residents of other parts of the Town. The 20.5-acre parcel of Property known as the Tinkham Forest is contained within the area Town residents and Mr. Tinkham regularly called the Town Forest.
Mr. Tinkham received the Property as a gift by deed from Mr. Lemuel LeBaron Dexter (“Mr. Dexter") on October 5, 1953. (Ex. 3.) Mr. Dexter had expressed that the Property be preserved, kept open, and accessible to all for future generations. Mr. Elisha L. Dexter, Mr. Dexter’s father, acquired title to the Property on October 28, 1873, from a Ms. Mary A. Clark (“Ms. Clark”). Mr. Dexter acquired the title to the Properly in 1876, upon the death of his father. (Ex. 2.) The deed from Ms. Clark to Mr. Dexter’s father makes no mention of a right to use the so called “Sippican Trail” or any other trail or right of way. The deed from Mr. Dexter on October 5, 1953 to Mr. Tinkham, as appurtenant to the 20.5-acre parcel, for the first time, included the following language: “all rights of use in connection with the so-called ‘Sippican Trail’ in either direction, also in connection with that road leading south easterly to Randall Road. Also the right of use over any land of the lot at the west to and into Solomon Road; said land being the same premises referred to in the will of Alice Meigs, and conveyed by Mary A. Clark to Levi M. Snow by deed dated September 29, 1862, and recorded in Book 314, Page 115, and later conveyed by Mary A. Clark to Elisha Dexter by deed dated May 19, 1873 and recorded in Book 400, Pages 102-103 and by another deed dated October 12, 1872 in Book 401, Page 27.” The Mattapoisett Board of Selectmen accepted the deed by signing their approval on the deed.
In 1974, members of the Town’s Conservation Commission organized a testimonial dinner to publicly thank Mr. Tinkham for giving the Property to the Town. At the testimonial dinner, a wooden sign which reads “N.F. Tinkham Forest Mattapoisett 1968" made by students at Old Rochester Regional High School was presented to the Town. The sign was erected on North Street near the base of the water tower and presently remains at that location.

N.F. Tinkham

Mr. Tinkham was born in Mattapoisett, and he lived in the Town his entire life. By trade he was a carpenter and boat builder, an avid outdoorsman and a hunter, who never owned a car. Mr. Tinkham would often take hikes throughout the Town Forest including the 20.5 acres of land he acquired from Mr. Dexter, walking with his beagles and various family members. His travels would take him to various areas of the Town Forest known as Solomon’s Cellar, Haskell’s Swamp, and Rebello’s Field. Mr. Tinkham would visit the “split *637 rock,” depicted in Exhibit 22, during his walks in the woods and he enjoyed the overall beauty and tranquility of the undisturbed woodlands. Like Mr. Dexter, Mr. Tinkham detested "No Trespassing” signs which limited his ability to travel and hunt where he desired.
Mr. Tinkham served on the Town’s first Conservation Commission which at the time was charged with protecting and acquiring the Town’s open space. Mr. Tinkham served on the Conservation Commission until his death in 1975. He was regarded as a senior member of the Town’s first Conservation Commission, given his expressed affection and knowledge of the woodlands and other natural resources throughout the Town. Mr. Tinkham’s lifelong passion and utmost concern was protecting open space and the woods of the Town for enjoyment by the Town’s present and future residents. He constantly strove to protect open land, as he believed that during his lifetime he and other property owners were mere stewards of the woods and open spaces of the Town. At the time Mr. Tinkham deeded the Property to the Town, he believed that the land that he owned was not his private property, that it was only his to protect for future generations, and that as much as possible of the woods of the Town should be preserved and made accessible to all who wish to walk within them.

Access to the Property

An official atlas record of the Plymouth County Commissioners was admitted during trial that depicts the location of public ways and private ways in the Town. (Ex. 37.) As of the date of this map, 1902, there were no public ways shown leading anywhere near the Property. Prior access to the Property, including the old wood lots in the vicinity of the Property, was entirely permissive. Abutting property owners of the various privately owned wood lots had “gentlemen’s agreements” that would allow abutters ingress and egress to their wood lots in the Town Forest over their own private, forested land. The Property has no frontage on any public way and is only accessible by traversing private properly. Persons have accessed the Properly via a number of footpaths leading to the Property from the end of Randall Road, a public way in the Town. The Town has not maintained any public roads through the Property subsequent to the Town’s 1858 Town Meeting, when the Town purportedly discontinued the “Old Town Road” from North Street, near the present day water tower, in an easterly direction.[7] (Ex. 29.) While the plaintiffs maintain (referring to Exs. 24, 28, 29 and 33) the TinkhamForest contains portions of ancient trails (most notably the Sippican Trail or Old Marion Trail) believed by Mr. Tinkham and Mr. Dexter to have been used by Native Americans and the first English settlers of Mattapoisett, this court does not find, based on the evidence presented at trial, there are any public or ancient ways or trails which would provide current day public access to the Property.
In 1997, the Town of Mattapoisett prepared an Open Space and Recreation Plan as a guide to facilitate the preservation and maintenance of the natural and recreational resources of the town. This plan, published in January 1998, stated that the Tinkham Forest had public access, had a high recreational potential and was protected in perpetuity. (Ex. 27 p. 129.) The Tinkham Forest is among the town’s limited inventory of permanently protected open space. (Ex. 27.)
Since the Property was deeded to the Town, a large area of the Town Forest has been purchased for development as an exclusive country club community known as the “Bay Club at Mattapoisett” (“Bay Club”). The Property is surrounded by land owned and partially-developed by the Bay Club. (Ex. 4.) The Bay Club sits on 625 acres of woodlands in the area once referred to as the Town Forest. (Exs. 9, 10, 11.)
During the Bay Club subdivision proceedings it was the Town’s position concerning public right of access to Tinkham Forest that “the Town had rights of access to the Tinkham Forest across the Bay Club Parcel” over “several ancient ways or trails, including, but not limited to, the ways known as the ‘Old Marion Trail’ or ‘Sippican Trail,’ the ‘Solomon Road’ and ‘Pine Island Way.’ ” (Ex. 23.) In connection with the review process of the Bay Club subdivision, the Mattapoisett Planning Board requested that the Bay Club integrate access to the Tinkham Forest into its design. However, the Bay Club refused claiming that there were no public rights of access across the Bay Club parcel. Consequently, a dispute arose between the Planning Board and the Town and Bay Club and the land owners of the subdivision property as to whether the Town had a right to gain access to the Tinkham Forest over several ancient ways or trails, including the so-called Sippican Trail. In order to avoid the expense and delay of litigation, the Town, Bay Club and the purported owners of the subdivision property signed an Agreement on June 16, 2003.[8] (Ex. 23.) In this Agreement the purported owners of the subdivision property granted a right of way easement to and from the Tinkham Forest over two of the subdivision roads from Route 6 and over two trails to be determined; one to the Sippican Trail extending to Marion and the other from the Sippican Trail to Industrial Drive. Access provided for under the agreement required that individuals check in at the security desk and walk a mile along private subdivision roads to access the Property.
Before the construction of the Bay Club subdivision, one of the accesses to the Tinkham Forest most commonly used by the public was a pathway leading from North Street at the Water Tower to the Tinkham Forest.[9] Access to the Property which Mr. Tinkham owned was difficult and limited to walking down one of several old ancient trails and ways to enter onto the Property. From the evidence presented at trial, this court cannot state with any accuracy the number of *638 people over time that have traveled to, through or walked in the present day Tinkham Forest.
In October 2005, during a visit by some of the plaintiffs and their attorney to the Tinkham Forest via the pathway leading from North Street at the Water Tower, Bay Club personnel maintained that there was no direct access to the Tinkham Forest from any public way and in order to legally access the Tinkham Forest it was necessary for would-be visitors to make arrangements with Bay Club Security to walk through the development to the Tinkham Forest. Bay Club maintained this access was limited to citizens of Mattapoisett and not available to residents of other towns. Bay Club security would inform persons walking to the Tinkham Forest that they were on private property and that they were trespassing unless, they checked in at the securily gate and walked only on the route specified in the Agreement dated June 16, 2003.

Proposed Land Exchange

At the Town of Mattapoisett Annual Town Meeting held on May 10, 11, 12, 2004, by petition on behalf of the defendant, Bay Club of Mattapoisett, LLC, Article 8 was placed on the Annual Town Meeting Warrant of the Town of Mattapoisett to authorize the Board of Selectmen to exchange the Property for five parcels of land owned by the defendant, Dennis Mahoney & Sons, Inc. (Ex. 8.) Prior to the vote concerning Article 8 of the May 2004 Annual Town Meeting Warrant of the Town of Mattapoisett,[10] the defendant, Bay Club, presented voters with an information packet describing the many benefits that it claimed would accrue to the Town of Mattapoisett from the proposed exchange of the Property for the five other parcels of land. (Ex. 7.) One of the benefits Bay Club of Mattapoisett, LLC claimed this exchange of land would provide to the Town was an increase in annual real estate tax revenue of approximately $300,000 per year derived from the anticipated twenty house lots it would develop on the Property. The mechanics of the proposed exchange would be for Dennis Mahoney & Sons, Inc. to deed the five exchange parcels to the Town in return for a deed to the Property from the Town to Dennis Mahoney & Sons, Inc. Dennis Mahoney & Sons, Inc. would then convey the Property to the Bay Club of Mattapoisett, LLC for the development of approximately twenty residential lots adjacent to the current Bay Club property.
The five parcels proposed by Article 8 to be exchanged for the Property consist of several parcels in Mattapoisett having a total acreage of 95.78 acres, one parcel in Rochester of 10 acres and several parcels in Marion having a total acreage of 300 acres. Parcels 1, 2, and 3, totaling 85 acres, lie within the Mattapoisett River Valley, provide approximately 3800 linear feet of frontage on the Mattapoisett River, are within the Zone II area of all the Town’s public drinking wells, as well as the Town’s Watershed Protection District.[11] (Exs. 7, 15.) Zone II is the area directly adjacent to and surrounding the wells from which the Town’s drinking water is extracted. The Town of Mattapoisett Water and Sewer Department together with the parties to this litigation agree that obtaining and limiting the future use of Parcels 1, 2, and 3, would further protect the watershed resources of the Town and would also further protect and develop the Town’s drinking water supply.
Parcel 4 is located near several other parcels of land owned by the Mattapoisett Land Trust and will expand the “green belt” in the area of Town known as Aucoot. (Ex. 7.) Parcel 5 is located in the Town of Marion, contains approximately 300 acres, is accessible via Industrial Drive (a public way in Mattapoisett) and land that the Town of Marion has acquired from Dennis Mahoney & Sons by eminent domain for the purpose of constructing a bike path that abuts Parcel 5. Approximately 238 acres of Parcel 5 is presently subject to a permanent conservation restriction which prohibits certain uses and acts on the conservation land. (Ex. 25.) However, the conservation restriction does not, in any way, grant public access to the land designated for conservation purposes. The entirety of Parcel 5 as well as the entirety of Parcels 1, 2, 3, and 4, remain private property, held by Dennis Mahoney & Sons, Inc. All five of the proposed exchange parcels have access from public roads or public land.

Defendants’ Motion for Involuntary Dismissal

At the conclusion of the plaintiffs presentation of evidence and at the close of all the evidence, the defendants moved for involuntary dismissal under Mass.R.Civ.P. 41(b)(2). This court declined to rule on both motions until the conclusion of all of the evidence presented at trial.
The defendant argues that the plaintiffs complaint should be dismissed as “unripe” pursuant to G.L.c. 214, §3(10). The Town claims that they have not in any way violated the terms of Mr. Tinkham’s gift and therefore the case brought by the ten taxpayer plaintiffs is premature and not ripe for adjudication. The Town argues that the holding in Cohen v. City of Lynn, 33 Mass.App.Ct. 271 (1992), is controlling and it is a perquisite to a ten-taxpayer suit pursuant to G.L.c. 214, §3(10) that the defendant town take a step beyond what is provided for in the deed regarding the subject property. At this juncture, the Town has: (1) identified the parcels subject to the proposed land swap: (2) obtained Town Meeting approval; and (3) filed a “cy pres” action in the Probate Court to lawfully make the proposed land exchange. The Town contends that these are proper actions in its role as trustee and were specifically authorized by the deed of Mr. Tinkham and therefore plaintiffs’ complaint under G.L.c. 214, §3(10) is premature.
This court makes no determination as to whether the acts of the Town trustee taken so far were proper or were specifically authorized by Mr. Tinkham’s 1968 deed, as that is not the relevant inquiry. The Town has framed this argument as a ripeness issue, but for *639 these purposes, this court will examine whether the plaintiffs have failed to sufficiently demonstrate that an actual controversy exists as required by G.L.c. 231A. Justice requires that the court declare the rights of the parties rather than dismiss an action seeking declaratory judgment. See Attorney General v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976). “A court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainly or controversy giving rise to the proceedings or for other sufficient reasons.” G.L.c. 231A, §3. The Supreme Judicial Court has stated that “we require only that the pleading set forth a real dispute caused by the assertion by one parly of a legal relation or status or right in which he has a definite interest and the denial of such assertion by the other party, where the circumstances . . . indicate that, unless a determination is had, subsequent litigation as to the identical subject matter will ensue.” City of Boston v. Keene Corp., 416 Mass. 301, 304 (1989), quoting Hogan v. Hogan, 320 Mass. 658, 662 (1947).
If permitted, the Town has demonstrated its willingness and desire to effectuate the exchange of land with Bay Club by filing the Probate Court Cy Pres action and by taking necessary actions to effectuate the land exchange.[12] If this court dismisses the plaintiffs complaint at this juncture, surely subsequent litigation as to the identical subject matter will in all likelihood ensue. Clearly, this is the circumstance the Supreme Judicial Court sought to avoid when rendering the City of Boston decision. Having to litigate the same issues, after this case has been fully tried before this court, will only serve to waste time and precious judicial resources. Both parties have had a full opportunity to present evidence and this court concludes the plaintiffs have demonstrated that an actual controversy, ripe for adjudication, exists, For these reasons, the defendant’s Motion for Involuntary Dismissal at the close of plaintiffs evidence and at the close of all evidence presented at trial is respectfully denied.

Rulings of Law

Public Trust - Specific Charitable Purpose

In 1968, Nelson Floyd Tinkham deeded his rights to the 20.5-acre parcel of land, currently known as the “Tinkham Forest,” to the Town of Mattapoisset. The 1968 deed[13] provided that the Property would be used for the purposes authorized by G.L.c. 40, §8C and other Massachusetts statutes relating to the conservation of real property. (Ex. 1, p. 2.) This court must first determine whether the language used in the deed and the circumstances attending the conveyance in 1968 imposed a public trust limited to a specific charitable purpose upon the title to the Property. The issue of whether or not a public trust with a specific charitable purpose was created by the deed is of critical importance because if the Town acquired unconditional title to the Properly, it would have the right to dispose of the Property for any purpose upon a two-thirds vote of the legislature. However, if the Town acquired title to the Property subject to a public trust with a specific charitable purpose, the legislature would not have the power to authorize the Town to divert the Property to other uses. Opinion of the Justices to the Senate, 369 Mass. 979, 982 (1975). If the deed created a public trust with a specific charitable purpose, the acceptance of the deed by the Town would “constitute a contract between the donor and the donee which must be observed and enforced.” Dunphy v. Commonwealth, 368 Mass. 376, 383 (1975). Such a contract can not be impaired by the legislature as that would be contraiy to the mandate of Article I, §10 of the Constitution of the United States. Opinion of the Justices to the Senate, 369 Mass. at 983.
“Property conveyed to a governmental body ... for particular public purposes may be subject to an enforceable general public obligation or trust to use the property for those purposes.” Cohen v. City of Lynn, 33 Mass.App.Ct. 271, 275 (1992), quoting Nickols v. Commissioners of Middlesex County, 341 Mass. 13, 18 (1960). Whether a trust is imposed is “a matter of interpretation of the particular instrument and determination of the particular donors’ intent” and “is to be ascertained from a study of the instrument[s] as a whole in the light of the circumstances attending . . . [their] execution.” Cohen v. City of Lynn, 33 Mass.App.Ct. 271, 275 (1992), quoting Nickols v. Commissioners of Middlesex County, 341 Mass. 13, 19 (1960). See Harrison v. Marcus, 396 Mass.App.Ct. 271, 275 (1991) (“Trust instruments must be construed to give effect to the intention of the settlor as ascertained from the language of the whole instrument considered in light of the attendant circumstances”); Hillman v. Roman Catholic Bishop of Fall River, 24 Mass.App.Ct. 241, 243 (1987) (“Quite correctly, the judge construed the instrument of conveyance by considering its language as illuminated by the circumstances attendant upon its drafting and delivery”). “To create a charitable trust limited to a specific charitable purpose ... requires a .. . definite expression of intention in the way of granting language . . .” Hillman, 24 Mass.App.Ct. at 244 (1987). “No magical incantation, e.g., ”in trust," is required to create a trust." Id.
After a careful examination of the language of the 1968 deed and considering the totality of the circumstances attending its execution, this court finds that the deed conveyed by Mr. Tinkham to the Town created a public trust with a specific charitable purpose. Mr. Tinkham intended that the parcel be used for the purposes authorized by G.L.c. 40, §8-C[14] and other Massachusetts statutes related to conservation of real property. The purposes for which G.L.c. 40, §8-C authorizes conservation commissions to receive interests in real property are: (1) to acquire; (2) to maintain; (3) to improve; (4) to protect; (5) to limit future use of; *640 (6) to otherwise conserve and properly utilize open spaces; (7) to manage; and (8) to control. The fact that Mr. Tinkham appointed the Conservation Commission of the Town of Mattapoisett to “manage and control the property” and “enforce and preserve this trust” also leads this court to find that Mr. Tinkham intended to create a public trust with a specific charitable purpose.
The Property owned by Mr. Tinkham was one of extreme importance to him as he often hiked through the larger Town forest which included visits to the Property with his dogs and various family members. Significantly, Mr. Tinkham provided for various contingencies in the deed to the Town related to conservation purposes. For example, Mr. Tinkham provided that should the land adjacent to the Property become a thickly settled residential area, a portion of the Property may be set aside for park or recreational purposes. Also, Mr. Tinkham provided that should the Property be taken by eminent domain, the proceeds would be applied to the Town’s conservation fund. If Mr. Tinkham intended his gift to be one of a general charitable donation, the inclusion of theses specific contingencies regarding alternate uses and disposition of proceeds would be counterintuitive to this outcome.
Also noteworthy is the lack of a power of sale provision contained in Mr. Tinkham’s deed. If a general charitable gift was contemplated by Mr. Tinkham, one would expect a power of sale provision or a provision addressing how the proceeds were to be applied should the Town decide to sell or dispose of the Property. The absence of such a provision addressing the voluntary disposal of the Property and the inclusion of the provisions regarding the establishment of park or recreational space and deposit of eminent domain proceeds, indicates that Mr. Tinkham had a specific charitable purpose intent and did not intend for the gift to be freely alienable by the Town. Based on Mr. Tinkham’s adoption of the purposes authorized by G.L.c. 40, §8-C, together with the overwhelming evidence presented at trial, this court finds that Mr. Tinkham intended to conserve and protect the Property for the use and enjoyment of future generations of residents of the Town. Clearly, Mr. Tinkham’s intent was to create a public trust with a specific public charitable purpose when he deeded the Properly to the Town in 1968.

Doctrine of Cy Pres

After finding that Mr. Tinkham intended a specific charitable purpose when he deeded the Property to the Town, this court must now determine whether it has become impracticable to further the purposes of Mr. Tinkham’s charitable trust under the doctrine of cy pres. The Town claims that the protection of open space and the protection of the Town’s watershed resources were the primary reasons Mr. Tinkham granted the Property to the Town. The Town argues that it has become impracticable to carry out the trust purposes, claiming that the Property is “landlocked” and virtually inaccessible to the public and therefore the Property is of no value as open space. The Town also argues, without substantial opposition, that the Property is of little or no watershed value as the land contains no wetland areas. Because the Property is virtually inaccessible to the public and because the Property has little or no watershed value, the Town maintains the stated purposes of the trust are impracticable to carry out and the court should apply cy pres to authorize the proposed exchange of land. The Plaintiffs argue that Mr. Tinkham’s expressed intent was to preserve the Tinkham Forest from development and retain it for conservation and open space purposes. The Plaintiffs claim that allowing the development of the Property into residential house lots is in direct contravention of Mr. Tinkham’s expressed intent as Mr. Tinkham provided that should the land surrounding the Property become a thickly settled residential area, a portion of the Property could be used for park and recreation purposes. Mr. Tinkham made no provisions that would allow the Property to be developed in its entirety. In addition, the Plaintiffs argue that even an advantageous land exchange cannot justify the application of cy pres if the settlor’s intended charitable purpose is capable of being fulfilled.
“Where property is given in trust for a particular charitable purpose, and it is impossible or impracticable to carry out that purpose, the trust does not fail if the testator has a more general intention to devote the property to charitable purposes. In such a case the property will be applied under the direction of the court to some charitable purpose falling within the general intention of the testator.” Wesley United Methodist Church v. Harvard College, 366 Mass. 247, 251 (1974), quoting Scott, Abridgement of the Law of Trusts, Section 399.2 (1960). “Cy pres will not apply, however, if the trust remains capable of meaningful application, or if despite impracticability, there is a lack of general charitable intent on the testator’s part.” Id. Absolute impossibility of performance is not a requirement for the application of the doctrine. Id. “[A] thin thread of theoretically possible (but unlikely) change in circumstances” which renders the trust purposes viable will not preclude the court from applying cy pres. Id. In addition, cy pres cannot be applied simply because the proposed plan may be a more effective way of carrying out the specific trust purposes. Other jurisdictions, when confronted with the issue, have stated “Cy pres does not authorize judicial alteration of a charitable disposition simply because there may be some even more efficacious way of achieving the dispositional purposes.” Museum of the American Indian v. Huntington Library, 610 N.Y.Sup., 2d 488, 499 (1994).
Having found that the deed executed by Mr. Tinkham created a trust with a specific charitable *641 purpose, this court further finds that the specific charitable purpose remains capable of meaningful application now and into the future.[15] While access to the Property may be more difficult than in the past and the watershed value of the property may be minimal, Mr. Tinkham’s specific charitable purpose may still be fulfilled. Mr. Tinkham’s charitable purpose was not limited to the protection of open space and watershed resources. It is clear from the evidence admitted at trial, Mr. Tinkham was also interested in protecting and preserving the Tinkham Forest for the use and enjoyment of future generations as well as providing additional open conservation space in the Town.
While the Property may be visited less often than in the past and while accessing the property may be more difficult at present, this court, nevertheless, finds that the trust purposes remain capable of being fulfilled now and into the future. It is undisputed that access is not as free as it once was and the right of the public to access the Property remains uncertain, however, in the opinion of this court, open and free access to the Property by all persons is not the determinative factor in deciding whether Mr. Tinkham’s intentions are capable of being fulfilled. Allowing the Property to be developed into twenty house lots, even with the proposed exchange of land, would be in direct contravention of Mr. Tinkham’s expressed intent.
Under the doctrine of reasonable deviation, “[t]he court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to the circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.” Museum of Fine Arts v. Beland, 432 Mass. 540, 544 (2000), quoting Restatement (Second) of Trusts §381 (1959). Comment (e) to §381 states that “if maintenance of the [Tinkham Forest] was an essential part of the testator’s purpose, the court will not direct or permit a trustee to maintain the [Tinkham Forest] on other land.” Here, the terms of Mr. Tinkham’s deed to the Town are quite capable of being fulfilled and are not impossible or illegal to cany out. Continued compliance with the provisions of the deed is entirely possible and no circumstances exist that would defeat or substantially impair the accomplishment of the stated purposes of Mr. Tinkham’s charitable trust. In fact, the most significant change of circumstance since the execution of the deed, Bay Club’s development of the surrounding property, was addressed by Mr. Tinkham in the deed itself and therefore the application of the doctrine of reasonable deviation is not applicable. Mindful of the possibility the Tinkham Forest would someday be surrounded by a residential development, Mr. Tinkham included a provision in the deed that “if, in the future, the land areas adjacent to the property conveyed to the trust hereunder shall become a thickly settled residential area, a portion of the said land may be set aside for recreational or playground purposes or all or any portion of the land may be used for public park purposes.” The inclusion of this provision clearly indicates Mr. Tinkham’s intent that the Tinkham Forest not be converted into residential house lots but rather serve as a respite for those who may live adjacent to the Property.

ORDER FOR JUDGMENT

Plymouth Superior Court Civil

Action No. PLCV2004-01126-B

1. For the foregoing reasons, it is hereby ORDERED that a declaration enter, declaring that the Town Meeting vote on Article 8 of the May 10, 11, 12, 2004 Town Meeting authorizing the exchange of land conveyed to the Town by deed of Nelson Floyd Tinkham dated November 26, 1968 and recorded with Plymouth County Registry of Deeds in Book 3488, Page 732 is invalid and of no legal effect and that the provisions of the trust created by deed of Nelson Floyd Tinkham to the Town of Mattapoisett on November 26, 1968 remain in force and effect.
2. Within the discretion of this court, pursuant to G.L.c. 214, §3(10), this court declines to award the plaintiffs their attorneys fees and costs.

Plymouth Family and Probate

Court No. 04E0087-GC1

1. For the foregoing reasons, it is hereby DECLARED that the exchange of the Property conveyed to the Town by deed of Nelson Floyd Tinkham dated November 26, 1968 and recorded with Plymouth County Registry of Deeds in Book 3488, Page 732 for over 400 acres of land (exchange parcels) does not constitute an appropriate application of the Doctrine of Cy Pres.

By written notice to the Clerk of the Plymouth Superior Court dated March 30, 2007, the Office of the Attorney General respectfully declined to attend the trial of these matters and took no position with respect to the outcome of these actions.

Counsel for defendants Dermis Mahoney & Sons, Inc. and Bay Club of Mattapoisett, LLC attended only the first day of trial and deferred litigation to counsel for the Town of Mattapoisett without further participation in these proceedings.

The deed stated that the land and appurtenant rights were granted, released and dedicated to the Town of Mattapoisett in trust upon six numbered paragraphs of terms and conditions as follows: The Town would be trustee under the trust; The Mattapoisett Conservation Commission would manage, control, enforce and preserve the trust; The property-conveyed to the trust would be known as the “N.F. Tinkham Forest”; The trust property would be used for the purposes authorized by: (a) G.L.c. 40, §8C; and (b) other Massachusetts statutes relating to conservation, including the protection and development of the natural resources and the protection of the watershed resources of the Town of Mattapoisett; and (c) if in the future the land areas adjacent to the property conveyed to the trust shall become a thickly settled residential area a portion may he set aside for recreational or playground purposes or all or any portion may be used for public park purposes, provided the name “N.F. Tinkham Forest” be retained for any woodland in such area. If the trust property or any part should be taken by eminent domain, the net proceeds shall be added to the conservation fund of the Town of Mattapoisett. The trust would become effective upon acceptance of the deed by the Board of Selectmen.

Exhibit 29 is a copy of the Town Meeting vote to discontinue the “Old Town Road.” This document indicates that the road being discontinued began at North Street, near the land of James LeBaron. The roadway leading from North Street into what used to be known as the Town Forest runs eastward from North Street, next to the land of J. LeBaron.

This court lacks sufficient evidence to determine whether this agreement is presently enforceable. Conditions of the agreement required a Town Meeting vote to abandon any alleged rights of way that previously existed in exchange for a right of way easement to the Property. Apparently, no such Town Meeting vote was ever held.

This was the purported route used by the plaintiffs attorney who directed the court and defendants’ attorneys to the Property during the view. After arriving at the Property, it was difficult to ascertain if one was even within the boundaries of the Property or was traversing on private property.

Article 8 was passed by a 2/3s vote of the Annual Town Meeting of Mattapoisett of May 10, 11, 12, 2004 as follows (365 by 2/3, 243) YES 245 NO 120.

The Property is not located in the Mattapoisett River Watershed, the watershed that provides 100% of the public water supplies for four towns, including Mattapoisett, although the Property currently provides limited watershed protection purpose in its current state.

See Town of Mattapoisett Annual Town Meeting, May 10, 11, 12, 2004 (Ex. 8), where Town Meeting members voted to authorize the Board of Selectman and the Conservation Commission to “take all action necessary, including requesting necessary legislation from the General Court... to effectuate the exchange” of the Tinkham Forest parcel for the five proposed exchange parcels.

The deed stated that the land and appurtenant rights were granted, released and dedicated to the Town of Mattapoisett in trust upon six numbered paragraphs of terms and conditions as follows:
1. The Town of Mattapoisett shall be trustee under this trust.
2. The Conservation Commission of the Town of Mattapoisett shall manage and control the property conveyed to this public charitable trust and shall constitute a board of visitors to enforce and preserve this trust. As such it may take appropriate legal action, as an alternate to the Attorney General as petitioner. If such Commission should cease to exist, the powers granted to it under this trust shall devolve upon and vest in the Board of Selectman.
3. The property conveyed to the trust hereunder shall be known as the “N.F. Tinkham Forest.”
4. The trust property would be used for the purposes authorized by General Laws Ch. 40, Section 8-C as it may hereafter be amended and other Massachusetts statutes now in being or hereafter adopted relating to conservation, including the protection and development of the natural resources and the protection of watershed resources of the Town of Mattapoisett and if, in the future, the land areas adjacent to the property conveyed to the trust hereunder shall become a thickly settled residential area, a portion of the said land may be set aside for recreational or playground purposes or all or any portion of the land may be used for public park purposes. Provided only that the name “N.F. Tinkham Forest” be retained for any woodland in such recreation area, playground or park.
5. If the trust properly or any interest or part thereof should be taken by eminent domain by any body, corporate or political, the net proceeds of the award after paying charges related thereto shall be added to the conservation fund of the Town of Mattapoisett.
6. This trust shall become effective upon the acceptance of this deed by said Town, signified by the approval of its Board of Selectmen hereto as authorized by General Laws Ch. 40, Section 8-C.

G.L.c. 40, §8-C states in relevant part:
A city or town which accepts this section may establish a conservation commission, hereinafter called the commission, for the promotion and development of the natural resources and for the protection of watershed resources of said city or town. Such commission shall conduct researches into its local land areas and shall seek to co-ordinate the activities of unofficial bodies organized for similar purposes, and may advertise, prepare, print and distribute books, maps, charts, plans and pamphlets which in its judgment it deems necessary for its work. Among such plans may be a conservation and passive outdoor recreation plan which shall be, as far as possible, consistent with the town master plan and with any regional plans relating to the area . . . Such plan shall show other areas which public necessity requires to be retained for conservation and passive recreation use .. . Said commission may receive gifts, bequests or devises of personal property or interests in real property of the kinds mentioned below in the name of the city or town, subject to the approval of the ci1y council in a city or of the selectmen in a town. It may purchase interests in such land with sums available to it. If insufficient funds are available or other reasons so require, a city council or a town meeting may raise or transfer funds so that the commission may acquire in the name of the city or town by option, purchase, lease or otherwise the fee in such land or water rights, conservation restrictions, easements or other contractual rights including conveyances on conditions or with limitations or reversions, as may be necessary to acquire, maintain, improve, protect, limit the future use of or otherwise conserve and properly utilize open spaces in land and water areas within its city or town, and it shall manage and control the same.

Since this court concludes that it is not impracticable to carry out the purposes of the trust in this case, it is unnecessary to determine whether the Town’s proposed land swap would conform with the general charitable intent of the trust terms. See Milton v. Attorney Gen., 314 Mass. 238-39 (1943).